William Eddie MOSLEY and Trave Levell BROWN, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18236.

United States Court of Appeals Fifth Circuit.

Dec. 23, 1960.

Henry Gonzalez, Frank Ragano, Tampa, Fla., for appellants.

F. William Reeb, Asst. U. S. Atty., Tampa, Fla., E. Coleman Madsen, U. S. Atty., Miami, Fla., Don M. Stichter, Asst. U. S. Atty., Tampa, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The defendants were convicted of a conspiracy to violate the Internal Revenue liquor and illicit still laws, and each was sentenced to two years imprisonment. Robert E. Martin and John Powers were named as co-conspirators but not defendants. The indictment charged the period of the conspiracy as from January 1, 1956, to August 1, 1956. On July 31, 1956, Martin and Powers were surprised and arrested at an illicit still. Neither Mosley nor Brown was found at the still. Neither of them had been seen near the still during the three-day period that it had been under intermittent observation. It was not until March 17, 1958, over a year and a half later, that either Mosley or Brown was arrested or charged with guilty participation. Meanwhile, Martin and Powers had decided to give evidence against Mosley and Brown.

The conviction of both defendants depends upon the testimony of the alleged co-conspirators, Martin and Powers. As to Mosley there was some corroboration from Martin's wife, who testified to calls by Mosley at Martin's house, and from Mrs. Lucille Huddleston, the operator of the Oaks Hotel in Palmetto, Florida, about 15 to 17 miles from the still site. Mrs. Huddleston testified that Mosley was a frequent guest at her hotel; that she rented a room on July 5, 1956, to Mosley and Martin, and on July 28 to Mosley alone, and that possibly Martin was also there on July 28, but if so he failed to register.

As to Brown, the only corroborating evidence was that he held hunting rights on the 5000-acre pasture on which the still was located and supplied locks and keys for two of the seven gates to the pasture. The other five gates were left unlocked.

Neither of the defendants testified in his own behalf. They introduced several witnesses to impeach Martin, two of whom testified that Martin had, in effect, told them that he had seen Brown and Mosley riding around in the pasture hunting, that he thought that they had informed on him, and that he was going to name them as owners of the still to make his own punishment lighter.

Thus, while the evidence made a jury case, the connection of the defendants with the conspiracy depended upon the truthfulness *vel non* of the testimony of the two alleged co-conspirators. So much of the testimony has been briefly related in order to show the probable prejudicial effect of the admission of testimony now to be noted.

The court overruled the objections of the defendants to the testimony of the arresting officer as to statements made by Powers and Martin after their arrest. The officer testified:

"Powers stated to me that that was his first day there.

\* \* \* \* · \* \*

"And that he had been hired by a man that he did not know but would recognize.

"Martin stated to me that he was working for someone else but he declined at that time to identify the person. He stated he was being paid a dollar and a quarter per jug to run the whiskey; that the still had been there about three weeks but was going to be turned over because it was not producing as much as it should.

\*    \*    \*    \*    \*

"After we destroyed the still they were brought to Tampa to be taken before the United States Commissioner to post bond.

"At Martin's request I placed a telephone call—a collect telephone call—to an Eddie Mosley or Ed Mosley, at the Oaks Hotel in Palmetto, Florida.

"Q. What occurred then?

"A. As soon as the call was placed and I determined from the operator—I mean I made certain that it would be a collect call—I turned the receiver over to Martin.

"Q. Do you know what happened further after that, of your own knowledge?

"A. He had a conversation but I don't know anything as to the substance of it."

Powers subsequently identified Mosley as the man who hired him. Martin testified at length that Mosley had hired him previously to haul moonshine whiskey, and also got him to set up and operate this illicit still, that Brown had been with Mosley at the still, and that Brown had hauled a load of 1600 pounds of scratch feed to the still to be used in making moonshine whiskey. Martin further testified that Mosley was not at the Oaks Hotel when the arresting officer placed the call at his request, and that he did not then talk to Mosley. Their statements to the arresting officer tended to establish that Powers and Martin were mere employees, to connect Mosley with the conspiracy, to build the background for Brown's connection, and generally to bolster the testimony of Martin and of Powers.

Clearly, the testimony of the arresting officer as to statements made by Powers and Martin after their arrest was prejudicial to both defendants. That testimony, in our opinion, was not admissible against either Mosley or Brown. There is no evidence of any conspiracy which continued after Powers and Martin were arrested and the still was destroyed. The Government's theory is thus expressed in brief: "Martin's remarks to Sills refusing to identify the owners of the still evidenced an intent to conceal those persons, and could be considered to be in furtherance of the conspiracy." That kind of bootstrap argument has been several times rejected by the Supreme Court.

"The Government now asks us to expand this narrow exception to the hearsay rule and hold admissible a declaration, not made in furtherance of the alleged criminal transportation conspiracy charged, but made in furtherance of an alleged implied but uncharged conspiracy aimed at preventing detection and punishment. No federal court case cited by the Government suggests so hospitable a reception to the use of hearsay evidence to convict in conspiracy cases. The Government contention does find support in some but not all of the state court opinions cited in the Government brief. But in none of them does there appear to be recognition of any such broad exception to the hearsay rule as that here urged. The rule contended for by the Government could have far-reaching results. For under this rule plausible arguments could generally be made in conspiracy cases that most out-of-court statements offered in evidence tended to shield co-conspirators. We are not persuaded to adopt the Government's implicit conspiracy theory which in all criminal conspiracy cases would

create automatically a further breach of the general rule against the admission of hearsay evidence."

Krulewitch v. United States, 1949, 336 U.S. 440, 443–444, 69 S.Ct. 716, 718, 93 L.Ed. 790.

"While the concealment was alleged in this indictment as a part of the conspiracy, it was not proved. We think on this record that the conspiracy ended December 5, 1947.

\* \* \* \* \* \*

" \* \* \* Declarations of one conspirator may be used against the other conspirator not present on the theory that the declarant is the agent of the other, and the admissions of one are admissible against both under a standard exception to the hearsay rule applicable to the statements of a party. Clune v. United States, 159 U.S. 590, 593 [16 S.Ct. 125, 40 L.Ed. 269.] See United States v. Gooding, 12 Wheat. 460, 468–470.] [6 L.Ed. 693.] But such declaration can be used against the co-conspirator only when made in furtherance of the conspiracy. Fiswick v. United States, 329 U.S. 211, 217 [67 S.Ct. 224, 227, 91 L.Ed. 196]; Logan v. United States, 144 U.S. 263, 308–309 [12 S.Ct. 617, 631–632, 36 L.Ed. 429.] There can be no furtherance of a conspiracy that has ended. Therefore, the declarations of a conspirator do not bind the co-conspirator if made after the conspiracy has ended. That is the teaching of Krulewitch v. United States, supra, and Fiswick v. United States, supra."

Lutwak v. United States, 1953, 344 U.S. 604, 617, 618, 73 S.Ct. 481, 489, 97 L.Ed. 593.

See also Delli Paoli v. United States, 1957, 352 U.S. 232, 237, 77 S.Ct. 294, 1 L.Ed.2d 278; Montford v. United States, 5 Cir., 1952, 200 F.2d 759, 760; Thompson v. United States, 5 Cir., 1955, 227 F.2d 671, 674; Panci v. United States, 5 Cir., 1958, 256 F.2d 308, 311.

For the error in admitting statements by the claimed co-conspirators made after their arrest, the judgments of conviction are reversed and the causes remanded.

Reversed and remanded.