**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul HERNANDEZ, Defendant-Appellant.**

**No. 30339.**

United States Court of Appeals, Fifth Circuit.

April 5, 1971.

---

Clyde W. Woody, Marian S. Rosen, Woody & Rosen, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Edward B. McDonough, Jr., Raul A. Gonzalez, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

Appellant, Paul Hernandez, along with Santos Costillo Fernandez and Robert Munoz, was charged in a four-count indictment with violating Section 174 of Title 21 United States Code, relating to the unlawful importation, receipt, transportation, and concealment of eight pounds of heroin, and for conspiracy to commit those offenses. Prior to the trial of appellant, his co-defendants and co-conspirators entered pleas of guilty on separate criminal informations charging a violation of Section 4704(a) of Title 26 relating to the unlawful purchasing, selling, dispensing, or distributing of narcotic drugs except in or from the original stamped package.

Appellant, tried singly, was convicted on all four counts, and was sentenced to nine years on each count. The sentences run concurrently. After appellant's conviction the indictment was dismissed as to Fernandez and Munoz and sentences were then imposed on them on the informations.

Although this in forma pauperis record exceeds fifteen hundred pages the following with other facts presently appearing will suffice to pinpoint the alleged errors.

After receiving information that there was a large quantity of marijuana or heroin in Reynosa, Mexico, which would be smuggled into the United States, Customs agents stationed themselves at the port of entry at Hildalgo and began their surveillance of the vehicle involved and its two occupants. The agents followed the car to San Juan, Texas, where they stopped the car, conducted a search, and placed Fernandez and Munoz under arrest. There was recovered from the person of Munoz a quantity of heroin, and from the car four plastic bags containing heroin. After first denying knowledge of the contraband, Munoz told the agents that he had been contacted on Sunday, April 27, 1969, at the home of the appellant, Paul Hernandez, at which time appellant asked him if he wanted to make Five Hundred Dollars, that he gave an affirmative answer, and that appellant then told him to go to McAllen, Texas, obtain a room at a named motel and that a quantity of heroin would be delivered to him to bring to Houston, and that upon his arrival to call appellant at CA 6–8032 for further instructions. Fernandez told the agents Munoz was to receive $500.00, that he was asked to make the trip, that Munoz told him that he would give him one-half of whatever he got, that he had not been in on the deal originally with Hernandez. The Court permitted the two agents to give testimony as to these statements of Munoz and Fernandez.[1] The Court also admitted testimony of Fernandez and Munoz as to acts and statements of appellant after the arrest of the former. The action of the Court in admitting such testimony is made the basis of

---

1. The actual evidence admitted on trial is hereafter set out.

Specifications of Error One, Four and Seven.

Arrangements were made between Munoz and Fernandez with the agents in McAllen to convoy the heroin to appellant in Houston. Upon arrival in Victoria at 2:20 a. m. Munoz called appellant's number CA 6–8032 in Houston. The call was witnessed by the agents and overheard by Agents Rizzo and Wilson. Munoz inquired as to what he was to do with "the stuff" and was told to go to a motel, and call from there. The convoy continued to Houston and at 5 a. m. arrived at a motel where three rooms were engaged by Agent Rigsby. Soon thereafter Munoz accompanied by Agent Wilson called CA 6–8032, advising that he was in Room 33 at the named motel. Munoz was told to wait for Paul. About fifty-five minutes later appellant arrived, parked his car and entered Room 33. After instructions to Munoz to follow him four or five blocks, appellant left Room 33. The two vehicles left the motel, but appellant, becoming aware of surveillance, refused to take delivery. Shortly thereafter Munoz called appellant at CA 6–8032 and was instructed to change motels and to call him at 5 p. m. After changing motels Munoz called appellant twice and was given his room number. In the first conversation Munoz told him that he had placed "the stuff" in a locker box downtown [1A] and that he had the key with him. In the second conversation Munoz told him that he would meet him either at the room or in the motel parking lot and would deliver to him the key to the locker. In a later call from appellant to Munoz appellant told Munoz that he would be at the parking lot in about five minutes to receive the key. Very shortly appellant came to the parking lot where Munoz met him and apparently delivered to him the key. Surveillance was immediately set up on the locker but was discontinued after it was concluded that appellant was not going to take delivery of the heroin. Appellant's arrest followed on May 5, 1969.

Unknown to appellant one or more of the agents were present with Munoz when the several telephone conversations occurred.

■ Even though appellant was unaware that one or more of the Customs agents were listening to at least one end of the several telephone conversations between Munoz and himself, the agents could give their testimony as to such parts of the conversations overheard by them. Rathbun v. United States, 355 U. S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134.

In *Rathbun* a police officer used a telephone extension in an adjoining room. This was claimed to be a violation of Section 605 of the Federal Communications Act, 47 U.S.C.A. 605. The court said:

" * * * The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. * * * The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. * * * Each party to a telephone conversation takes the risk that the other party may have an extension telephone and *may allow another to overhear the conversation.*" (Emphasis supplied)

■ Upon appellant's motion the trial court found that no evidence was obtained or uncovered by electronic eavesdropping or bugging. Its findings are sustained by the evidence.[2]

---

1A. At the request of Agents Glenn and Rigsby four substitute bags containing a small amount of heroin were "stashed" in a locker at a downtown bus station.

2. Appellant in brief concedes:
"It should be noticed at this point that extensive hearings were held on appellant's motion as to electronic eavesdropping and bugging, but it appeared that the Government was not successful in their recording and no recorded material was introduced before the jury." (Court's finding is stated at pp. 653–659, 700–706.)

Equally unavailing is the contention that the court erred in permitting Munoz and Fernandez to testify as to acts of the appellant and conversations between them and the appellant.

The Specification of Error predicated upon the testimony of the Customs agents, as to statements made by Munoz and Fernandez *after their arrest* relating to their *prior* conversations with appellant, presents the crucial controversy of this appeal.

■ At this late date it cannot be controverted that confessions or admissions by one co-conspirator must be in furtherance of the conspiracy and when made by him after his apprehension are not in furtherance of the criminal enterprise. Fiswick v. United States, 329 U. S. 211, 217, 67 S.Ct. 224, 91 L.Ed. 196; Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213.

In Krulewitch v. United States, 336 U.S. 440, 443, 69 S.Ct. 716, 718, 93 L.Ed. 790, the court observed that the rule that,

" * * * hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts."

The Court has adhered strictly to this rule. Reference to only two decisions will suffice. Scarborough v. United States, 5 Cir., 232 F.2d 412; and Mosley v. United States, 5 Cir., 285 F.2d 226. In the former case the court admitted evidence of a Government agent as to statements of a co-conspirator *after his arrest*. This evidence was later excluded. The court stated that it was horn book law that such statements were inadmissible, and that under the peculiar circumstances its prejudicial effect could not be removed.

In briefs appellant relies upon, and appellee attempts to distinguish, Evans v. Dutton, 400 F.2d 826 (5 Cir.). However, since the briefs were published that case has been reversed, Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210. *Dutton* involved testimony admitted under a Georgia statute, which allows a co-conspirator's out-of-court statement made during the concealment phase of the conspiracy. The testimony objected to related to a statement attributed to a co-conspirator implicating defendant, made after the co-conspirator's arrest and arraignment. The co-conspirator did not testify. The court refused to declare the statute invalid merely because it did not square with the more restricted hearsay exception applicable in federal conspiracy trials, saying:

"Appellee does not challenge and we do not question the validity of the coconspirator exception applied in the federal courts.

"That the two evidentiary rules are not identical must be readily conceded. It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise. Lutwak v. United States, 344 U.S. 604 [73 S.Ct. 481, 97 L.Ed. 593]; Krulewitch v. United States, 336 U.S. 440 [69 S.Ct. 716]."

Both parties rely upon California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. That case involved a California statute which provides that "[e]vidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." [3]

---

Contrary to appellant's vigorous insistence no constitutional rights were impinged by the mere unsuccessful attempt to thus obtain information.

3. Section 770 merely requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial.

A 16-year-old minor was arrested for selling marihuana. Four days later while in custody he made an oral statement implicating Green. Later he testified at Green's preliminary hearing, being subjected to extensive cross-examination. On the trial two months later he proved to be "evasive and uncooperative," following which the court admitted the statements. The Court reversed the California appellate courts and sustained the validity of the statute, but pretermitted a ruling as to the oral statement made to and recounted by the police officer, stating that:

"[T]he reception into evidence of the Porter statement to Officer Wade may pose a harmless-error question which is more appropriately resolved by the California courts in the first instance."

But in by-passing the issue the Court made this observation:

"Whether Porter's apparent lapse of memory so affected Green's right to cross-examine as to make a critical difference in the application of the Confrontation Clause in this case is an issue which is not ripe for decision at this juncture. The state court did not focus on this precise question, which was irrelevant given its broader and *erroneous premise that an out-of-court statement of a witness is inadmissible as substantive evidence whatever the nature of the opportunity to cross-examine at the trial.*" (Emphasis supplied)

■ The Court concludes that, in view of the "scrupulously observed," (*Krulewitch*), the "limited scope" (*Dutton*), and the unmodified hearsay exceptions in federal conspiracy trials, the court erred in admitting the hearsay testimony of the Customs agents.

The co-conspirators, as well as the agents, testified and were subjected to extensive cross-examination. Appellee contends that since the co-conspirators in the course of their testimony described the incriminating statements made by appellant himself, together with his incriminating acts in arranging for the delivery of the heroin, the error, if any, was harmless.

Actually upon the trial, as distinguished from the hearing upon the motions to suppress and limit, Agent Rizzo gave no testimony as to statements made by Munoz and Fernandez after their arrest. Upon cross-examination of Fernandez, appellant, in an attempt at impeachment, went into some of the facts that the witness had told the agents but the witness made no mention of appellant.

On direct Munoz testified that shortly after his arrest he had told the officers that the heroin belonged to appellant and that he had sent him to pick it up and was going to pay him for it. On cross Munoz repudiated these statements as false.

Agent Wilson followed Munoz to the stand and his testimony, distinguished from that on the motions, was that after a telephone number was found in Munoz's billfold, Munoz said:

"That the telephone number belonged to Paul Hernandez in Houston, Texas, and that that was where the heroin was going. That he was to take it, and when he got near Houston he was to stop and call this number, advise Paul Hernandez that he was there, and that he would receive further instructions as to what to do. That Paul Hernandez had sent him down to the Valley to go into Mexico and pick up this load of heroin."

Wilson testified that Fernandez told them following his arrest that:

"He had been told that Robert was going to receive approximately $500. He was asked to make the trip and that if he would make this trip that Robert had told him that he would give him a half of what he got, whether it be money or what have you." [4]

---

4. On cross Wilson amplified his testimony, stating that Fernandez had said that Munoz had come to the border to pick up the load of heroin "to take it back to Paul Hernandez."

Taking into account the fact that both co-conspirators testified and were subjected to searching cross-examination, and, though denying the truthfulness of parts of their statements, admitted their authorship, coupled with evidence of the acts of the appellant respecting delivery of the heroin, we conclude that the error was harmless, and not prejudicial in the light of the whole record. 28 U.S.C.A. § 211. Rule 52(a) Fed.R.Crim.P.

Appellant insists that there was prejudicial error in admitting testimony of the Customs agents as to facts supplied to them by informers.[5] In his oral charge the court instructed the jury as to this evidence as follows:

"Now we have had evidence here of what some informer told Mr. Riggs and what some informer told Mr. Wilson. In that connection I charge you that whatever those informers said is not evidence before us. Because we don't have them here to cross examine and I only admitted that evidence for the purpose of showing why these officers did what they did as I have told you on other occasions."

Appellant relies upon Brown v. United States, 5 Cir., 202 F.2d 474;

---

5. Riggs testified that on April 28, 1969, he received information:

"That an unidentified person from Houston, Texas, would be—in the very near future he would be in Reynosa, Mexico, to receive a large quantity of either marijuana or heroin which he would smuggle into the United States."

Prior to receiving this testimony the court had ruled:

"I'm going to allow this man [to] tell us what this informant told him, not for the truth of the statements of the informant, but to show what this officer did with that information and what he did thereafter, and for that purpose only. We don't have that informant here to cross examine. So I'm not allowing it for the truth of the statement but only to show what this man did, what happened thereafter."

The witness further testified that on May 1, 1969, he:

"Received additional information that unidentified persons were in Reynosa, Mexico, in a 1969 Chevrolet two-door cream over lime in color, bearing Texas license RBR 168, and that they—all right, sir. You had the year, the license number and the color of the vehicle on May 1st 1969 is that right, sir?"

Agent Wilson testified:

"I received a telephone call on April 29th at approximately 8:00 p. m. and it was related that there was a large quantity of either heroin or marijuana over in Reynosa, Mexico that was going to be smuggled into the United States and that I should come to McAllen so that I would be closer in on the situation to receive any other phone calls that I might get."

Respecting this testimony the court ruled:

"Overruled. He just says that in the course of his duties he received information that a load of marijuana or heroin was in Reynosa to be crossed over here and that he should come over here and be closer to it. I don't see anything wrong with it. Nobody ever pointed any finger at your client or anything else like that.

["Mrs. Rosen: Well would the court instruct the jury that they shall not consider this for any purpose as to our defendant Paul Hernandez?"]

"I will instruct you again that what information this man received is not to be considered by you for any purpose other than to show why he did what he did thereafter because of that information."

The agent further testified:

"I received a second telephone call at approximately 3:30 p. m. on May 1st of 1969 * * *. It was from the same person that I had talked to earlier and that information was that the large amount of either heroin or marijuana which was in Reynosa, Mexico, was going to be smuggled into the United States, that there were some persons there, that they were in a 1969 Chevrolet Capri white or cream colored over a lime green, it was a two-door vehicle, and it bore the '69 Texas license of RBR 168."

Upon an intervening objection the court ruled:

"I will instruct the jury that he received this call in the course of his business as a special agent, that I am receiving that testimony not for the truth of the matters stated to him but to show why he did anything after that if he did. Go ahead and tell us."

Landsdown v. United States, 5 Cir., 348 F.2d 405; McMillian v. United States, 5 Cir., 363 F.2d 165; and United States v. Duke, 5 Cir., 423 F.2d 387, all decided by this Court. In *Brown* the officers testified that they had information that the defendants were dealers in marihuana. In *Landsdown* the officers stated that they had arrested Landsdown and Tisdale when they received a radio call in connection with attempts to sell some jewelry by two suspects, one of which was the appellant, and that a burglary complaint had come in over the telephone. In *McMillian* the Court allowed testimony of an officer to the effect that when he approached the house for an interview he recognized the automobile as the one that had previously been described by a confidential informer as having been involved in illicit liquor operations other than the one charged. In *Duke* the officer testified as to information from an informant describing the physical appearance of the two suspects and where they would be for the purpose of receiving the heroin. The description fit the suspects whom the officer had previously seen in the car used by them. In each of these cases the admitted testimony related to information that pointed directly to the suspects involved. The evidence here was background evidence admitted to show that the officers did not act in a vacuum and it did not point to appellant. The Court both in its rulings on the objections to admissibility and in its oral charge strictly limited the evidence to that single purpose. We are of the view that prejudicial error in respect to this evidence has not been demonstrated.

■ We find nothing in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, which dealt with the prosecution's responsibility to produce evidence known to it, that would apply to appellee's action in failing to advise appellant in advance of his trial on April 20, 1970, that criminal informations had been filed on December 8, 1969, against the co-conspirators and pleas of guilty had been taken against them in the absence of appellant and his counsel.

■ The informations and the pleas thereon were matters of public record in the courthouse at Brownsville where the trial was had and were available to appellant and his counsel. The fact that Fernandez on cross, and later Munoz on direct, testified that they had plead guilty "in this case," and "in respect to this case," respectively, when the charge laid in the informations grew out of the same acts, did not require the prosecution to interrupt the trial for rectification or amplification respecting the filing of the informations and the proceeding as to the pleas of guilty. This Specification of Error, too, lacks merit.

■■ We find no error in the court's charge on the issue of the statutory presumption from the fact of possession. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, United States v. Hernandez, 2nd Cir., 290 F.2d 86, 90. Under the evidence it was for the jury to determine whether Fernandez and Munoz were the agents of appellant, and whether he had possession of the heroin through their agency.

■ The court did not err in refusing to require the Government to make an election between the several counts of the indictment. United States v. Agueci, 2nd Cir., 310 F.2d 817, 828; and Martinez v. United States, 1st Cir., 220 F.2d 740. In the latter case the court held:

"21 U.S.C.A. § 174 in the disjunctive establishes multiple offenses. It punishes not merely the act of selling, but also the act of fraudulently or knowingly importing narcotic drugs contrary to law, and the separate offenses, after such importation, of receiving, concealing, buying the same, or in any manner facilitating the transportation, concealment or sale thereof, knowing them to have been imported contrary to law. The language in Burton v. United States, 1906, 202 U.S. 344, 377, 26 S.Ct. 688,

697, 50 L.Ed. 1057, is applicable here, that 'Congress intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischiefs intended to be reached and remedied.'"

The judgment of conviction is affirmed.