**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joe SUMMERVILLE, Defendant-Appellant.**

**No. 72-3789**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 17, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I.

William P. Johnson, Carrollton, Ga., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., P. Bruce Kirwan, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

PER CURIAM:

Joe Summerville, his wife Evelyn Lue Summerville, and their daughter, Betty Lue, were convicted by a jury of possessing and transporting 105 gallons of non-taxpaid whiskey in violation of 26 U.S.C.A. § 5604(a)(1). Joe Summerville appeals his sentence of two years in the custody of the Attorney General on two grounds: (i) that the whiskey was discovered through an illegal search and the evidence produced by it should have been suppressed and (ii) that his sentence was unduly influenced by the introduction of his prior record, some of the items thereon being erroneously reported as convictions when they were not. Finding both contentions without merit, we affirm.

### Search

The record indicates that the government agents had received a tip regarding Mr. Summerville. They were told that "there was supposed to be some liquor either brought to the Summerville residence or there was someone going to leave the residence and go and pick some up."[1]

On the strength of this tip from a "reliable informant" the agents conducted a stakeout of the Summerville residence (which is also apparently the location of the appellant's business) beginning at 11:00 p. m. of the night of July 2, 1972. At about 4:15 a. m. on July 3, 1972, from their vantage point across the road from the house, the agents observed a light come on and some movement on the premises. A few

1. From the transcript of the October 20, 1972 hearing where appellant challenged the sufficiency of the probable cause for the search.

minutes later they saw three persons enter a 1963 white Ford automobile and drive off. They followed this vehicle for a while, using a "leapfrog" technique where two vehicles alternate following the suspect car in order to avoid detection by those under surveillance. At one point, the officers lost sight of the Summerville car. One agent testified that when the vehicle had originally left the family house, it was riding with its trunk higher in the air than was normal for that make of car. After losing sight of the car, the agents later found the vehicle again about 40 minutes later. This time, the vehicle was riding low "as if it were weighted down." The agents pulled the car over and approached it. One agent who approached the car testified that he could smell the aroma of "moonshine whiskey" emanating from the car. After all three occupants were out of the car, an agent shined his flashlight into the back seat and rear floorboard of the car. He saw a number of clear plastic, one-gallon jugs there. Subsequently, the car was searched at the agents' headquarters and some 105 gallons of illicit whiskey were uncovered— 33 one-gallon jugs in the back seat and floorboards of the car, and 72 one-gallon jugs in the trunk.

 Summerville's chief contention is that, based on the informant's tip, the government agents had probable cause to secure a warrant at the time of the stakeout of his home and that since they failed to obtain one *then*, the subsequent discovery of the whiskey in the vehicle was an unconstitutional search and should have been suppressed. We cannot agree with this.

The agents had not sufficient information upon which to justify the issuance of a warrant by a detached magistrate. All they knew was that appellant *might* come into possession of *some* moonshine *sometime* in the near future. There were no details indicating the method or circumstances under which the crime would occur. There were no objective facts corroborating the story, save the knowledge of one Alcohol, Tax and Firearms Division agent that "ever since I have been here in Newnan for approximately three years I have received information that Mr. Summerville was bootlegging moonshine whiskey." [2]

This was not sufficient evidence to put before a magistrate during the afternoon and evening hours of July 2, 1972. More was needed. Spinelli v. United States, 1968, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Whiteley v. Warden, 1971, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; Bailey v. United States, 5 Cir., 1967, 386 F.2d 1, 3; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

Only when the tip was corroborated by some objective or tangible evidence could the agents justify a search. Aguilar v. Texas, *supra.* As it happened though, the point at which this independent and corroborative evidence was observed was when the defendant (and his family members) were in the very vehicle which was searched.

 It is now reasonably settled that a search of a vehicle which has the capacity to convey its occupants and possible contraband contents to a place of refuge from a *warranted* search, may be searched *without* a warrant provided there is "probable cause" to suspect the commission of a crime or the possession of contraband. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; United States v. Brown, 5 Cir., 1969, 411 F.2d 478; Williams v. United States, 5 Cir., 1968, 404 F.2d 493.

 Clearly this was the case here. The agents who had "tailed" the suspect car could not reasonably halt the car at any time prior to that which they did. They had observed the car "riding high" with its rear end jacked up on special supporting springs prior to the time they lost sight of the car. Later, when they

---

**2.** Transcript of the October 20, 1972 hearing at p. 40. See footnote 1, *supra.*

regained contact with it, the car seemed to be heavily weighted down. This fact in connection with the tip now presented sufficient probable cause to halt the vehicle, to search for illicit whiskey, without a warrant. Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327; Gonzales v. Beto, 5 Cir., 1970, 425 F.2d 963; Davis v. Smith, 5 Cir., 1970, 430 F.2d 1256, 1260. See also, Clay v. United States, 5 Cir. 1956, 239 F.2d 196.

No warrant was required since the occupants of the car might reasonably be expected to move the car to a place of hiring or dispose of the suspected contraband. Carroll v. United States, *supra*.

The actual search of the vehicle was properly conducted. The agents smelled whiskey [3] from five to ten feet away and saw sitting on the back seat, plastic jugs of the type they knew to be commonly used by the local rumrunners. Thus we conclude the search was legitimately based on probable cause and was conducted at a point when no warrant was needed due to the location of the contraband in a readily movable vehicle. Appellant's contention that the agents *had* to seek a warrant many hours earlier based on the informant's tip simply has no foundation in fact, or precedent in law.

### Sentence

■ Appellant's contention that his sentence [4] was unduly influenced by his prior record is simply without merit. The hearing on sentencing was conducted about two weeks after the trial. It takes up 15 pages of the record. A careful reading of the report of that hearing clearly reveals that: (i) the defendants were adequately represented by Counsel, (ii) each was given a chance to speak up and in fact, Mr. and Mrs. Summerville each did have exculpatory statements to make in their own behalves, (iii) Counsel for appellant vigorously challenged the accuracy of Mr. Summerville's record, (iv) the trial court recognized the inaccuracies and agreed to take into account *only* those convictions which were acknowledged as valid, and (v) the trial judge based his sentence primarily on his perception that Summerville had used his wife and 18 year old daughter as decoys in the illegal operation.[5] Accordingly, we find there is neither an action based upon misinformation, nor an abuse of discretion.

Affirmed.

---

3. The jury evidently chose not to believe Mrs. Summerville's statement that she knew of no whiskey in the car nor could she smell any there. Trial transcript page 161.

4. The sentence was two years in the custody of the Attorney General. 26 U.S.C.A. § 5604 provides for punishment by imprisonment for up to *five* years and fines of up to $10,000 for each offense. The sentence imposed was certainly far from the maximum.

5. We quote from a portion of the trial judge's statements in passing sentence on the defendant:

&ast; &ast; &ast; &ast; &ast;

"In the case of Mr. Joe Summerville, I will only take into consideration the conviction, the 1939 conviction, driving under the influence, and the 1965 conviction of possession and transportation of whiskey in Carroll County, Georgia, in passing upon his sentence.

"What is of more significance to me than his past record is the manner in which this crime was committed and the manner in which he used his family in order to commit the crime. I have no respect or I can't tolerate any man who would use his family, especially a seventeen-year-old girl, seventeen years old at that time, drive around in the middle of the night carrying a load, carrying 105 gallons of whiskey. Appears to me very strongly, after I heard the evidence in this case and all the testimony in the case, that this—he was using his wife and his daughter more as a sham or decoy to keep anybody from stopping him from carrying whiskey. Otherwise, why in the world would any man, who had any other lawful business at that hour of the morning, 3:00 or 4:00 or 5:00 o'clock in the morning, be out with his family driving around.

"The evidence is pretty clear on that. It's almost undisputed. *And that's the most serious thing in this case.*" (Emphasis supplied).