**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Telesforo Ray GOMEZ, and Cayetano Morin-Degollado, Defendants-Appellants.**

**No. 75–2415.**

United States Court of Appeals, Fifth Circuit.

March 25, 1976.

Rehearing and Rehearing En Banc Denied May 26, 1976.

Clyde W. Woody, Houston, Tex., for
Gomez.

Abel Toscano, Jr., Harlingen, Tex., for Morin.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, GOLDBERG and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Defendants, Telesforo Ray Gomez and Cayetano Morin-Degollado, appeal from their convictions for conspiracy to distribute, 21 U.S.C.A. § 846, and knowingly and intentionally distributing and possessing with intent to distribute, 21 U.S.C.A. § 841(a)(1), approximately 460 pounds of marijuana. These six points are alleged on appeal: (1) prejudicial error in admitting an agent's hearsay testimony as to what an informant told him; (2) error in denial of motion to suppress evidence; (3) insufficient evidence; (4) improper conduct of trial judge; (5) improper admission into evidence of a gun; and (6) improper jury instructions. Deciding against defendants' arguments, we affirm.

### The Facts

There were five original defendants: the two appellants and Josue Morin-Degollado, Saloma Gonzalez-Serrano and David William Howison.

On December 21, 1974, Special Drug Agent Murray received a tip from a reliable, unidentified informant, that a large quantity of marijuana would be picked up later that night. The location given was a well known smuggler's border crossing point near La Militar Tavern in Penitas, Texas, close to the United States-Mexican border. Although the informant did not name those involved, he did relate that the contraband was to be picked up in a 1968 Chevrolet pickup truck with sideboards, bearing a 1974 Texas license plate, DJ 9481, and that the owners of the marijuana would be in the area and driving a 1974 red Ford sedan, license number VCY 381. This car was later determined to be owned by defendant Cayetano Morin-Degollado.

Acting on this information agent Wilkins proceeded to the location. As he was riding through the area, Wilkins saw both vehicles in the parking lot of La Frontera Tavern, located about 75 yards from La Militar. He noticed two men walking alongside the highway towards the tavern. They were later discovered to be Howison and Josue Morin-Degollado. The agent then concealed himself near the place where he believed the contraband would be picked up. From his position of surveillance, Wilkins soon observed Howison and Josue Morin-Degollado leave La Frontera, disappear for a few minutes into the dense underbrush surrounding the area, and then return to the tavern. Shortly, all five defendants left La Frontera together. Howison and Josue Morin-Degollado took the truck to an area near where they had previously entered the underbrush and began to load the pickup with burlap sacks. With loading completed, the truck pulled alongside the car and Josue got out of the truck and into the front seat of the Ford with the two appellants and Gonzalez-Serrano while Howison stayed in the pickup. Proceeding toward McAllen, Texas, both vehicles were soon stopped after about 20 miles by Government agents.

A search of the truck revealed 460 pounds of marijuana. Only a loaded .38 caliber pistol was found under the passenger side of the front seat on the initial search of the Ford automobile. A later search at the station, however, revealed marijuana debris found in the folds of a blue blanket in the trunk.

A jury found Gomez, Howison and Cayetano Morin-Degollado guilty of the conspiracy and knowing possession with intent to distribute 460 pounds of marijuana. Gonzalez-Serrano was found not guilty. Josue Morin-Degollado fled the court's jurisdiction prior to trial. Gomez and Cayetano Morin-Degollado were sentenced to two concurrent five year

terms, with special parole of ten years. Howison did not appeal.

## Informant's Hearsay

 Although not specifically argued in the briefs, defendants strongly urged at oral argument that the convictions should be reversed because the court allowed agent Murray to testify that the informant told him the owners of the marijuana would be driving a red 1974 Ford, license number VCY 381. The informant was not available for cross-examination. Defendants say the admission of this hearsay evidence as to marijuana ownership constituted reversible error.

As soon as the agent had testified to this statement, the judge instructed the jury in the proper use of this type of evidence.

I am admitting what the informant told agent Murray here not for the truthfulness of what he told him but just to see why the officers did whatever they did after that because the informer is not here for us to cross-examine.

The judge on three occasions instructed the jury as to the limited use of the evidence. This testimony, he said, was to help inform the jury why the agents were in that area in the first place.

We have previously approved such testimony for such limited purpose. To explain why the agents were at the scene of the crime, the evidence is, of course, not hearsay, but direct evidence of what the informant told the agent. In *United States v. Herrera*, 455 F.2d 157 (5th Cir. 1972), we said of such evidence:

This testimony was not relied upon by the Government to establish the truth of what was said and the jury was so instructed. The trial court specifically limited the use of this evidence to showing why the customs agent took the action he did to obtain a physical identification of Herrera.

455 F.2d at 158.

But to accomplish this purpose, it was not necessary for the agent to tell the jury that the informant told him the owner of the marijuana would be in the red Ford. That testimony tended to point directly to a connection between the marijuana and the occupants of the red Ford, and was purely hearsay evidence of that fact. In *United States v. Hernandez*, 441 F.2d 157 (5th Cir.), *cert. denied*, 404 U.S. 847, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971), this Court distinguished between the two aspects of such testimony. In discussing the prior cases of *Brown v. United States*, 202 F.2d 474 (5th Cir. 1953), *Landsdown v. United States*, 348 F.2d 405 (5th Cir. 1965), *McMillian v. United States*, 363 F.2d 165 (5th Cir. 1966), and *United States v. Duke*, 423 F.2d 387 (5th Cir. 1970), the Court in *Hernandez* said that:

In each of these cases the admitted testimony related to information that pointed directly to the suspects involved. The evidence here was background evidence admitted to show that the officers did not act in a vacuum and it did not point to appellant. The Court both in its rulings on the objections to admissibility and in its oral charge strictly limited the evidence to that single purpose. We are of the view that prejudicial error in respect to this evidence has not been demonstrated.

441 F.2d at 164. *Cf. Busby v. United States*, 296 F.2d 328, 332 (9th Cir. 1961), *cert. denied*, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962) and *Smith v. United States*, 70 App.D.C. 255, 105 F.2d 778, 779 (1939).

In the recent case of *United States v. Rodriguez*, 524 F.2d 485 (5th Cir. 1975), we held as inadmissible hearsay an agent's testimony that the marijuana involved belonged to Rodriguez. Apparently centering on the inability of a jury to disregard the probative nature of the testimony as hearsay, compared to its nonhearsay purpose, the Court said:

Despite the court's cautionary instruction however, the nature of the testimony was such that even this pre-admission warning was probably insufficient to remove the statements from

the realm of hearsay. No instruction, regardless of its specificity or timeliness, could have precluded the jury from considering the informant's statements as some evidence that the defendant was in fact the owner of the seized marijuana. The most impartial and responsible juror could not have avoided drawing an inference that the informant's statements, as recited by Agent Lawrence, had some probative value.

524 F.2d at 487 *citing* McCormick, Evidence 587 (2d ed. 1972).

Although not as clearly pointing to the defendants as in *Rodriguez,* the testimony was of the same nature, "pointed directly to the suspects involved," to use the language of *Hernandez,* and should not have been admitted. In any kind of balancing approach, we would hold that the need for the evidence does not outweigh the possible improper prejudice that results from its admission. *See, e. g., Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir. 1961); C. McCormick, *Handbook of the Law of Evidence* § 301 at 627, §§ 304–305 at 632–634 (1954); Fed.R.Evid. § 803(24). *Cf. United States v. Williamson,* 482 F.2d 508, 514 (5th Cir. 1973).

The admission of the testimony does not, however, require automatic reversal. Against the argument that the admission of the highly prejudicial statements linking Rodriguez to the marijuana warranted reversal, the Court in *Rodriguez* held that before reversal, there must be a significant possibility that, considering the other evidence in the case, the statement had a "substantial impact" on the verdict of the jury. *United States v. Rodriguez, supra.*

Viewing the evidence as a whole, we find little, if anything, to indicate that the testimony had a substantial impact on the verdict of the jury. Ownership of the marijuana was not an issue. So the statement was not directly controlling on any point in issue. The other evidence produced by the Government strongly supported the charge of conspiracy and

possession. Direct eyewitness testimony overwhelmingly tied those in the Ford to the marijuana. It made little difference who "owned" it, and we think the statement, in the context of the entire evidence which has been substantially recited elsewhere in this opinion, had virtually no possibility of affecting the jury verdict. We consider the statement as one of those errors that slips into a trial from time to time with no real impact on the outcome, which, although quite insignificant at trial, grows to importance only on appeal. We do not believe a new trial is justified in this case.

### Motion to Suppress

██ The district court denied a motion to suppress the marijuana as evidence. Defendants assert that the warrantless search and seizure at the time of the stop was not justified by probable cause based on the informant's tip, and that the search at the station, some three hours after the arrest, was unjustified. It is within the district judge's discretion as to how to rule on such a motion, a determination which will not be disturbed unless that discretion was abused. *See United States v. Horton,* 488 F.2d 374, 380 (5th Cir. 1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).

The judge was correct in ruling that there was probable cause for the arrest and the search. We pretermit the question whether the informant's tip alone would be enough for probable cause under *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). It is important to note here that the tip was fully corroborated by surveillance and the agents did not rely solely on the informant's information. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Guajardo,* 508 F.2d 1093 (5th Cir. 1975); *United States v. Summerville,* 477 F.2d 393 (5th Cir. 1973). The informant had proved reliable on at least eight occa-

sions. His information here was fully corroborated as to time, location, vehicle identity, and license plate number. The agent saw burlap bags being loaded on the truck by Howison and Josue, and then saw Josue get into the Ford. The agent said he had seen marijuana carried in similar burlap sacks on numerous occasions. Under these circumstances, surveillance established probable cause that the vehicles contained contraband. With moving vehicles, no warrant would be required under these exigent circumstances. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Williams v. United States,* 404 F.2d 493 (5th Cir. 1968). *Cf. United States v. Mitchell,* 525 F.2d 1275 (5th Cir. 1976) (involving a planned search of a vehicle under the control of the cooperating informer).

The detailed search of the Ford some three hours later at the Drug Enforcement Agency station was not illegal. At that time the marijuana debris was found in the blanket. The initial search of the Ford at the time of the arrest was cursory. Agents were looking only for weapons and bags of contraband like those found in the truck. This search, occurring at night, took place on an expressway and in the flow of traffic.

> A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house.

*Chambers v. Maroney, supra,* 399 U.S. at 52 n. 10, 90 S.Ct. at 1981, 26 L.Ed.2d at 429. *Chambers* held the probable cause existing at the scene could carry over to the search at the station. This term the Supreme Court reaffirmed that a later warrantless search of an automobile at the station is not illegal under appropriate circumstances. The probable cause to search at the scene, "still obtained at the station house." *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209, 44 U.S.L.W. 3327 (1975) *quoting Chambers v. Maroney, supra. See also Card-*

*well v. Lewis,* 417 U.S. 583, 594–595, 94 S.Ct. 2464, 2471–2472, 41 L.Ed.2d 325 (1975).

## Sufficiency of the Evidence

▮ Defendants moved for a judgment of acquittal at the close of the Government's case, and at the completion of defendants' case. Defendants argue there was insufficient evidence for the conviction.

Reviewing the evidence in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), we find the evidence sufficient to convict these defendants on both the conspiracy count and the substantive possession with intent to distribute count.

To prove the conspiracy's existence, the Government did not have to present direct evidence of an agreement, but could present circumstantial proof from which the jury could have drawn the reasonable inference that an agreement existed. *United States v. Warner,* 441 F.2d 821, 830 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

The evidence against Cayetano Morin-Degollado is stronger than that against Gomez. Both defendants were in the tavern sitting at the same table with Josue Morin-Degollado. It was Cayetano's car. As the driver, he waited in La Frontera's parking lot until the marijuana laden truck returned. At that point Josue, Cayetano's brother, got out of the truck and into the car's front seat. The pickup and the Ford then proceeded toward McAllen, Texas. Drug agents kept their movements under continual surveillance. The two vehicles followed one another for 20 miles, fluctuating in speed between 45–60 m.p.h., passing one another from time to time but all the while staying only two or three car lengths apart. The gun and the marijuana debris were found in Cayetano's car. Under these circumstances the jury could well find that Cayetano was a conspirator.

The evidence is not as strong against Gomez. But we believe the circumstantial evidence sufficient to support a finding beyond a reasonable doubt that he was a part of this criminal enterprise. *See United States v. Warner, supra,* 441 F.2d at 830; *Rodriguez v. United States,* 373 F.2d 17, 18 (5th Cir. 1967). Gomez was in the bar with the other defendants, left at the same time and rode in the back seat of the car. The area of the bar was a well known smuggler's point. The quantity of contraband involved, 460 pounds, required the assistance of others to distribute. Gomez points out that one of the original defendants, Gonzalez-Serrano, was acquitted. Gonzalez-Serrano, however, was in the bar when the other defendants arrived and was heard to ask for a ride. No such testimony was given for Gomez.

With the conspiracy proven, these two defendants did not have to have actual possession to be guilty of the possession count. Constructive possession would be sufficient. *See United States v. Mendoza,* 433 F.2d 891, 896 (5th Cir. 1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971). Here it was shown that defendants had more than a mere presence with the drugs as was the case in *Murray v. United States,* 403 F.2d 694 (9th Cir. 1968), relied upon by defendants. The vehicle in which the defendants were riding followed in tandem with the truck that Josue loaded with the marijuana after which he got into the front seat. The large amount of marijuana supported a finding of a working relationship among several people which along with the setting, constituted sufficient evidence for constructive possession. *See, e. g., United States v. Horton, supra,* 488 F.2d at 381–382.

### Trial Judge's Conduct

The defendants assert two contentions as to the trial judge's conduct: *first,* a remark that Cayetano Morin-Degollado and Gonzalez-Serrano did speak English, although they claimed otherwise; and, *second,* an admonition that defense attorney sit down and allow the witness to answer the question.

The first remark was made in the jury's presence after a request for an interpreter. The judge, in addressing the interpreter, stated

. . . [A]rrange yourself so you can sit between the two that claim they don't speak English. I know they do.

This remark had no prejudicial impact on defendant Gomez. He was not one of the persons to whom the remark was directed. He demonstrates no way in which he was affected by the remark.

As to Cayetano, the remark does not warrant a new trial. The comment had nothing to do with his guilt or innocence. It occurred at the very outset of the case. The judge properly instructed the jury that they were the sole factfinders. Cayetano never testified so the remark did not impair his credibility. This was not a comment on the evidence nor on the credibility of witnesses as found in *United States v. Cisneros,* 491 F.2d 1068, 1074–1076 (5th Cir. 1974).

The second incident occurred when the judge told defense counsel to sit down and let the witness answer a question which counsel had just asked. Counsel was cutting off the witness before he had an opportunity to respond to the question. The admonition was not a comment on the testimony, the evidence or the defendants' guilt. The court has a responsibility to see that a witness has an opportunity to answer questions and the admonition was apparently necessary. *Bursten v. United States,* 395 F.2d 976, 983 (5th Cir. 1968). *See United States v. Owens,* 453 F.2d 355, 356 (5th Cir. 1971). This was an isolated incident and not a case of continual interruption and reprimand which might affect defendants' effective right to counsel, or adversely influence and prejudice the jury. *See Zebouni v. United States,* 226 F.2d 826 (5th Cir. 1955). The judge's actions did not deny a fair trial or show partiality to the Government. *See*

O'Brien v. United States, 411 F.2d 522, 523 (5th Cir. 1969).

### Evidence of the Gun

 The court over defendants' objection, allowed testimony that a loaded .38 caliber gun was found under the passenger's seat of the Ford. Defendants assert this evidence had no relevance to the crime charged and constituted prejudicial error.

A trial judge has broad discretion in the control of evidence. By the time this evidence was allowed, the Government had already presented its case on the conspiracy. The jury had adequate evidence to tie Josue Morin-Degollado, who was sitting over the gun, to the present defendants so that admission of the testimony was not wholly irrelevant. We find no abuse of trial court discretion. See United States v. Bryant, 490 F.2d 1372, 1378 (5th Cir.), cert. denied, 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1974).

Another contention revolves around the gun. The trial court allowed the jury to view the entire indictment during its deliberations. Count Three charged Josue Morin-Degollado with possession of the firearm. He was not there on trial. Before allowing the jury to view the indictment, the judge offered this instruction:

> Now you are going to have this indictment with you in the jury room. These two men are charged here with Count One and Count Two only. Count Three is not before you. Count Three charges another co-defendant that is not before us and whose case has not yet been tried. Involves him carrying a firearm. But that count is not to be used in any way against these people because they are not being charged with carrying any firearms or anything. So don't pay any attention to this Count Three in this indictment as to these defendants that are before us here.

Although it would have been better practice to have kept Count Three from the jury, we believe the court's admonition served as an adequate precaution. In United States v. Rice, 428 F.2d 923 (5th Cir. 1970), this Court rejected the contention that the jury was prejudiced by viewing the four count indictment where defendant had already been acquitted on two of the counts. There an instruction was also found to be adequate protection against improper prejudice.

### The Jury Instructions

 Defendants maintain that reversible error was committed by the district judge in his instructions to the jury. Specifically, they point to four separate instances: (1) charge on the limited admissibility of the marijuana debris found with the blanket in the car trunk; (2) charge on the circumstantial proof of specific intent; (3) references to defendants' failure to testify; and, (4) the charge on the law pertaining to principals to a crime. Defendants argue that the cumulative effect of these errors amounted to the court's acting as the Government's advocate.

We look to the charge as a whole. United States v. Williams, 473 F.2d 507, 509 (5th Cir. 1973). After a careful reading of the entire instructions, we are convinced that no prejudice resulted. Any possible prejudicial effect imparted by the charges in isolation was harmlessly lost in the totality of the instructions. The charges concerning the admissibility of the marijuana debris and circumstantial evidence of specific intent were not objected to at trial, and fall short of amounting to the plain error required for reversal under Rule 52(b), F.R. Crim.P.

As to the reference to defendants' failure to testify, the judge earlier cautioned the jury on the right of the defendants to remain silent and not to testify.

> Now a defendant in a criminal case has no obligation or duty whatsoever to bring before you any evidence. The Constitution of the United States even

guarantees that a defendant does not have to testify in a case. Now the defendants in this case have chosen to use that constitutional right that they need not testify, and their failure to testify is not to be used in any way by you in deciding this case. No presumption of guilt and no inference of any kind may be drawn from the failure of a defendant to testify in his own behalf. When you go to the jury room I instruct you not to even discuss the fact of I wonder why they didn't testify.

Defendants say the court's reference to aiding and abetting during the instruction on the law of principals, not alleged in the indictment, was improper because it lessened the Government's burden of proof. In a conspiracy, one co-conspirator is responsible for the actions of another co-conspirator in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Owen*, 492 F.2d 1100, 1104 (5th Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974). The fact that the court mentioned aiding and abetting in its charge, although not alleged in the indictment, would not invalidate the instruction. In related circumstances where the conspiracy indictment did not mention aiding and abetting, the courts have upheld such instructions as not being error. *See Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919, 925 (1949); *United States v. Martinez*, 514 F.2d 334, 338 (9th Cir. 1975).

Affirmed.

JOHN R. BROWN, Chief Judge (specially concurring):

I adhere to both the result and the opinion of Judge Roney for the Court. But echoing the concern of Judge Goldberg, I think that this practice of admitting hearsay evidence having strong incriminating tendencies to establish the basis of the agents' presence ought to be stopped.

I fully appreciate the concern of this earnest District Judge who candidly revealed he believes that such evidence is necessary so the jury will know why the agents were there and did not, say, happen to just stumble on to something by accident:

" . . . for instance I allowed evidence to come in here with regards to what an informer told Officer Murray. You will recall that Officer Murray testified that an informant called and told him there is going to be a load of marijuana picked up in a place near Penitas. He gave Officer Murray the license numbers of two automobiles, and he said that one was a Ford car, '75 Ford I believe he said, and a pickup, and that the men in the Ford would be the owner of the marijuana.

. . . The only reason that I admitted that evidence is to show you why these officers did what they did after they got out there in Penitas because that informer is not here. He cannot be cross examined."

Tr. 451 (Statement by Judge Garza).

As commendable as is his desire to make the whole trial as meaningful to the jury as possible when damaging and potentially prejudicial facts are thereby revealed, the practice is wrong and cannot be permitted. It not only infects a fair trial to the possible detriment to the accused. It adds just one more factor postponing finality since it invites an appeal with the uncertainty of the outcome as the reviewing Court matches the particular case against precedents pro and con.

GOLDBERG, Circuit Judge (dissenting):

Although I agree that defendant Cayetano Morin-Degollado's conviction should be affirmed, I must respectfully dissent from the majority's affirmance of co-defendant Telesforo Ray Gomez's conviction. As the majority points out, the district court admitted hearsay testimony of an informant's statement that the owners of the marijuana would be driving a red 1974 Ford sedan. I fully

agree with the majority that it was error to admit this testimony because, as Judge Roney notes,

> " '[it] pointed directly to the suspects involved' . . . . In any kind of balancing approach, we would hold that the need for the evidence does not outweigh the possible improper prejudice that results from its admission."

However, the matter is not concluded with this finding. Relying on *United States v. Rodriguez*, 5 Cir. 1975, 524 F.2d 485, the majority observes that this clearly wrongful admission of hearsay testimony requires reversal only if there is a "significant possibility that . . . the statement had a 'substantial impact' on the verdict of the jury." The relevant portion of the cited *Rodriguez* opinion is as follows:

> "To require a new trial, the prejudicial effect of improper matter, viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury."

Where I differ from the majority is in the application of the *Rodriguez* standard. In effect, Judge Roney concludes that the evidence against defendant Gomez is of such overwhelming strength that there could be no "significant possibility" that the erroneously admitted testimony could have had a "substantial impact" on the jury verdict. I believe that this conclusion is supportable as to defendant Cayetano Morin-Degollado who

owned and drove the red Ford. The evidence against the back seat passenger, defendant Gomez, however, is, as the majority twice admits, "not as strong." That evidence, although perhaps sufficient to support a guilty verdict,[1] is in fact very weak, and certainly does not "overwhelm" the prejudicial effect of the improper matter. *See Rodriguez, supra,* at 487. Absent the informant's testimony, the evidence shows only that Gomez was in the company of persons dealing in marijuana. Nowhere does the record indicate that Gomez left the bar to accompany Howison and Josue Morin-Degollado when they went into the woods to load the hidden marijuana into a pickup truck. The Ford sedan in which Gomez was a passenger was not the vehicle in which the police found the illegal weed. The blanket in Cayetano Morin-Degollado's car was never connected in any way with Gomez nor was the gun. We have no testimony of Gomez's participation in any marijuana dealings. The case against Gomez rests entirely on the fact that he kept company with individuals involved in illegal drug transactions—none of which transactions were shown to have occurred in his presence.

The majority attempts to minimize the impact of the hearsay testimony by noting first that "[o]wnership of the marijuana was not an issue." Whatever the legal distinctions between ownership and possession, it seems indisputable to me that since the Government's theory is one of constructive possession, there must be a significant possibility that the hearsay as to ownership had a substantial impact on the jury—particularly in a

---

1. I cannot conclude in the light of the standard set forth in *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1941), that the evidence here was not sufficient to support a jury verdict of guilty. However, *Rodriguez* does not utilize the *Glasser* test. Under *Rodriguez*, we must reverse the trial court if there is a " 'significant possibility . . . considering the other evidence . . . [that] the . . . statement had a substantial impact upon the verdict . . . .' "

Thus, a reversal may be in order upon a finding of a significant possibility of the requisite impact even though the main evidence standing alone could support a conviction. *See, e. g., United States v. Ratner,* 5 Cir. 1972, 464 F.2d 169, and *Odom v. United States,* 5 Cir. 1967, 377 F.2d 853. It is in borderline cases, like the present one, exhibiting weak but sufficient evidence, that *Rodriguez* has its real importance.

prosecution as close as this one. Moreover, the majority's contention that "the [hearsay] statement [with respect to ownership] was not directly controlling on any point in issue" and that therefore there is no significant possibility that the evidence had a substantial impact on the jury is strangely at odds with the majority's earlier assertions where it is said "That testimony tended to point directly to a connection between the marijuana and the occupants of the red Ford," and " '[the testimony] pointed directly to the suspects involved.' "

The majority's second effort to buttress its conclusion is found in its statement "Direct eyewitness testimony overwhelmingly tied those in the Ford to the marijuana." As I understand the evidence, no eyewitness testified that Gomez had been seen in the presence of the marijuana or that he had participated in any transactions. Rather the testimony established that Gomez was in the back seat of the car that picked up Josue Morin-Degollado who had handled the illegal goods. In my opinion, this evidence does not "overwhelmingly" tie Gomez to the marijuana dealings, and thus does meet the *Rodriguez* standard for reversal.[2]

A comparison with *Rodriguez* where Judge Wisdom found the other evidence of guilt so convincing that the erroneous submission could not have any "substantial impact," is instructive. In *Rodriguez,* an agent testified to an informant's statement that the defendant was the owner of the marijuana. Then, a convicted co-conspirator testified

> to the details of the operation, implicating Rodriguez in numerous ways.

Not only did he testify that he and Rodriguez were the owners of the marijuana, but he gave details of its purchase, importation, and eventual delivery to the appellant's vehicle where it was later seized.

*Rodriguez, supra,* at 486. Finally, the evidence showed that *Rodriguez* was the owner of the vehicle in which the police seized the marijuana. In contrast, here no one testified that Gomez was involved in the transactions. The red Ford sedan in which Gomez rode was not the truck from which the police confiscated the 460 pounds of marijuana, nor did Gomez own or drive the Ford.

Because this case requires a completely factual analysis for its result, my dissent is in one sense reluctantly voiced. In another sense, however, I am compelled to speak out for behind this evidentiary screen, we encounter what I perceive as a dangerous first step in the direction of debilitation and eventual erosion of the rule against hearsay testimony. "Substantial impact" and "overwhelming evidence" are concepts often difficult in application. But we must not permit their use on a case by case basis to undermine our long revered tradition against out-of-court statements lacking the necessary special indicia of trustworthiness. Clearly the evidence here is not overwhelming. In fact, it is barely sufficient to sustain these convictions. The majority's finding of no "substantial impact" in the face of such weak evidence has the unfortunate effect of importing wholesale the broad sufficiency test of *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1941), into an area which I believe was intended to be much

---

2. Later in his opinion, Judge Roney outlines additional evidence against *Gomez.* He points out that "[t]he quantity of contraband involved, 460 pounds, required the assistance of others to distribute" and also that "[t]he area of the bar was a well known smuggler's point." I do not believe that either of these assertions adds to the state's case. The weight of the illegal substance is not evidence of who was involved in the transaction and in this case does not lead to a rational inference that there must have been five men involved as opposed to four or three. In fact, the agent's testimony indicated that Howison and Josue Morin-Degollado loaded the marijuana *into the truck without help* from the other defendants. The two of them could and did easily handle the marijuana filled burlap bags without Gomez's assistance. Moreover, the fact that the area was known as a smuggler's point does implicate any and all who might be in that area.

more narrowly circumscribed. *See* note 1 *supra.* Certainly Rodriguez did not perceive the *Glasser* formulation to be a curative incantation in the hearsay domain. Therefore, let us not by wrongfully equating these two standards travel the road to conviction while remaining insensitive to the legal rules governing our journey.

Finally, in considering the claims raised here, we should not forget that the real problem in *Rodriguez* and the present case stems from trial court's originally having permitted the introduction of incurable hearsay testimony. Trial courts must carefully guard against the initial admission of free-wheeling and clearly unfair hearsay admissions of informant's statements. They must be quick to abjure this testimony which so often endangers a defendant's right to a fair trial with full rights of confrontation. Moreover, by adherence to this adjuration, burdensome and often difficult ad-hoc appellate review of individual cases will become a judicial rarity.

I respectfully dissent.