UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Anthony CAIN,
Defendant-Appellant.

No. 78–5276.

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1979.

Brett L. Grayson, Baton Rouge, La. (Court-appointed), for defendant-appellant.

Donald L. Beckner, U.S. Atty., C. Michael Hill, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal is from a conviction of interstate transportation of a stolen vehicle under the Dyer Act, 18 U.S.C. § 2312. The appellant seeks reversal of his conviction on three grounds: (1) the government was estopped from prosecuting the Dyer Act charge by a plea bargain agreement; (2) the appellant's detention and arrest lacked probable cause, so that evidence thereby obtained was improperly and prejudicially admitted; and (3) the appellant's conviction was prejudiced by the trial judge's improperly receiving into evidence inadmissible hearsay. We find nothing in the appellant's first two arguments that requires reversal, but his third argument is well-taken. Appellant's conviction is, therefore, reversed.

The appellant and a companion escaped from federal prison in Texarkana, Texas, during the early hours of August 21, 1977. On the following morning a pickup truck was reported missing from a residence approximately one mile from the prison.

At about the same time, a state trooper responding to a motorist's call on a citizens band radio concerning an abandoned truck found the pickup, with a khaki shirt and a tee shirt in it, on a bridge in Louisiana. A second unidentified "CB'er," responding to the state trooper's request for information, reported having seen two white, shirtless males walking from the place where the truck had been abandoned and attempting to hitch a ride toward the east. A call to police headquarters revealed that the truck had not been reported stolen, and the trooper then concluded that the truck had probably given out of gas. He sought, by way of a call on his CB, to determine the present whereabouts of the two shirtless men so that he could help them remove the truck from the bridge, where it was blocking a lane of traffic. Other unidentified "CB'ers" informed him that two shirtless, white males were seen walking five to six miles east of the truck's location. Realizing that if these two men were from the truck, they had passed several service stations, the trooper used his police radio to request that anyone seeing them stop them for questioning. A deputy sheriff who was in the area where the two men had been reported to be walking was, at that moment, watching two shirtless, white males walk toward him. As it turned out, these two men were the appellant and his fellow escaped prisoner.

At the deputy sheriff's request, the appellant and his companion entered the deputy's car and were taken to the service station where the state trooper waited with the truck, which had been towed there. When the men refused to answer questions concerning their identity, their clothing, and their connection to the abandoned truck, they were transported to the parish jail, where it was learned that the pickup truck had been stolen in Texarkana and that the two men had escaped from the Texarkana prison.

The appellant was returned to Texarkana to face the escape charge. He eventually pled guilty to that charge and received the sentence recommended by the prosecutor. He was subsequently charged with a violation of the Dyer Act by the federal prosecutor in Louisiana. The appellant contends that he changed his initial plea of not guilty on the escape charge to one of guilty because of a plea agreement with the prosecutor in Texas providing that the Dyer Act charge would not be prosecuted if the appellant pled guilty to the escape charge. The magistrate, in ruling on a pretrial motion to quash and/or dis-

miss the Dyer Act indictment, found "that there was no plea bargain entered into between the [appellant] and the United States Attorney's office for the Eastern District of Texas which would in any way preclude the United States Attorney for the Middle District of Louisiana from indicting the [appellant] for the interstate transportation of a stolen vehicle." Record, vol. 1, at 78. The magistrate's report was subsequently adopted by the district court. The existence of a plea bargain agreement is a factual issue, see De Marco v. United States, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974), and the district court's determination of the question can be set aside only if found to be clearly erroneous. See United States v. Graves, 428 F.2d 196, 200 (5th Cir. 1970). A careful review of the testimony given by the appellant, his attorney, and the government attorney reveals no error in the district court's conclusion that there was no agreement between the appellant and the government attorney in Texas to the effect that a plea of guilty to the escape charge would yield nonprosecution of the Dyer Act charge in Louisiana. To the contrary, the evidence shows that the government attorney in Texas expressly told the appellant of his lack of control over what the federal prosecutor in Louisiana chose to prosecute. The appellant's claim that he believed otherwise and relied to his detriment on that belief is not supported in the record. It is true that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled," Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Where, however, the prosecutor is not found to have made promises relating to nonprosecution of charges in another district and the appellant is not found to have relied on such alleged promises, this Court will affirm the trial court's denial of a motion to dismiss the subsequent prosecutions. United States v. Pihakis, 545 F.2d 973 (5th Cir. 1977).

The appellant next contends that his detention and arrest lacked probable cause, so that evidence thereby obtained was improperly and prejudicially admitted. This Court need not determine whether there was probable cause for arrest because no evidence flowing from the arrest was admitted at trial. The appellant sought to suppress only the fact that he was detained within five to ten miles of the abandoned pickup truck. The deputy sheriff's observation of the appellant and his position relative to the abandoned truck occurred prior to any sort of detention. The exclusionary rule applies only to evidence obtained as a result of an illegal search and seizure. E. g., Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The deputy sheriff's testimony regarding his observations of the appellant's location relative to the abandoned truck is not evidence discovered by the government through an illegal search and seizure.

Although the appellant's first two contentions are meritless, his third argument regarding the improper admission of hearsay into evidence requires that his conviction be reversed. The state trooper was allowed to testify, over objection, concerning the CB radio transmission he received regarding two white, shirtless males leaving the abandoned truck. There is no doubt and the government concedes that the statement constituted hearsay testimony, since it was offered for the truth of the matter therein. No limiting instruction regarding consideration of the statement for any purpose other than its truth was given. See United States v. Gomez, 529 F.2d 412, 416 (5th Cir. 1976). The government contends that the statement was admissible under Rule 803(1) of the Federal Rules of Evidence and that no confrontation rights of the appellant were infringed. The trial judge agreed with the prosecutor's assertion that the "CB'er's" statement was admissible under the "present sense impression" exception to the hearsay rule. That exception reads as follows:

(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.

*Id.* The appellant correctly points out, however, that his position five miles away within a few minutes of the statement contradicts the possibility that he could have been seen leaving the pickup truck at about that same time. Indeed, for the "CB'er" to have seen the appellant leave the truck immediately prior to his statement, one must make the unlikely assumption that Cain and his companion were transported at high speed immediately upon leaving the truck and resumed walking five miles later just prior to being observed by the deputy sheriff. The distances and time lapses involved make it impossible to determine whether the declaration by the "CB'er" was made immediately following the observation or not, but the chances that it was are slim. The exception to the hearsay rule found in Rule 803(1) is, therefore, inapplicable. The District of Columbia Circuit recently reached a similar conclusion in a case involving a hearsay statement that was calculated to have been made fifteen to forty-five minutes after the subject observation.

> This time span hardly qualifies as 'immediately' after the accident as that term is used in Rule 803(1), particularly in view of the commentary on that Rule contained in the Advisory Committee Notes. This states that the 'most significant practical difference [between 803(1) and 803(2)] will lie in the time lapse allowable between event and statement,' and that 803(1) 'recognizes that in many, if not most, instances, *precise contemporaneity* is impossible, and hence a *slight lapse* is allowable.' 56 F.R.D. 187, 304 (1973) (emphasis added). The thrust of this commentary is that in a circumstance such as that before us, an out-of-court statement made at least fifteen minutes after the event it describes is not admissible unless the declarant was still in a state of excitement resulting from the event.

*Hilyer v. Howat Concrete Co., Inc.*, 578 F.2d 422, 426 n. 7 (D.C.Cir.1978). *Accord, United States v. Kehoe*, 562 F.2d 65, 70 (1st Cir. 1977); *United States v. Medico*, 557 F.2d 309 (2d Cir. 1977). Since the declarant in this case had no reason to be in a state of excitement when he observed the two men or when he spoke and apparently was not in such a state, the "excited utterance" exception provided by Rule 803(2) is also inapplicable.

Neither is the residual hearsay exceptions provision of Rule 803(24) applicable here.

> In order for evidence to be admitted pursuant to Rule 803(24), five conditions must be met. These are:
>
> (1) The proponent of the evidence must give the adverse party the notice specified within the rule.
>
> (2) The statement must have circumstantial guarantees of trustworthiness equivalent to the 23 specific exceptions listed in Rule 803.
>
> (3) The statement must be offered as evidence of a material fact.
>
> (4) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts.
>
> (5) The general purposes of the Federal Rules and the interests of justice must best be served by admission of the statement into evidence.

*United States v. Mathis*, 559 F.2d 294, 298 (5th Cir. 1977). In addition to the lack of the requisite notice, the limited and narrow application of the 803(24) exception prevents its use in this case. Our recent decision in *Mathis* explains the reasoning behind the restricted application of Rule 803(24).

> Rule 803(24) was designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere. Yet tight reins must be held to insure that this provision does not emasculate our well developed body of law and the notions underlying our evidentiary rules. The trial court's

**682**

ruling would lead down the later impermissible path. The ruling was not in harmony with the general purposes of the Federal Rules.

The legislative history to Rule 803(24) is particularly instructive in this regard.

It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions

. . . . .

Fed.Rules Evid. Rule 803, 28 U.S.C.A. Historical Note.

In the criminal case, let it not be forgotten that there is an added consideration to be given weight in favor of the preference for live testimony. This consideration flows from the Sixth Amendment right of confrontation.

559 F.2d at 299. Although the trial court in this case admitted the objectionable statement under Rule 803(1) rather than Rule 803(24), we take this opportunity to reiterate the instruction in *Mathis*.

We conclude that the statement was inadmissible under the Federal Rules of Evidence and that, viewing the evidence as a whole, there is a significant possibility that the testimony had a substantial impact on the verdict of the jury. *See United States v. Gomez*, 529 F.2d 412, 416–17 (5th Cir. 1976). The statement was the only evidence directly linking Cain to the pickup truck. It remains to be seen whether a new jury will consider the remaining evidence, circumstantial in nature, sufficient to connect Cain to the stolen truck and establish his guilt. Having reversed on the basis of the improper admission of hearsay testimony, we consider it unnecessary to decide whether or not Cain's confrontation rights were infringed.

REVERSED.