UNITED STATES of America

v.

John W. FITZHUGH, Appellant.

No. 85–5750.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 13, 1985.

Decided Sept. 30, 1986.

P. David Gavin, Washington, D.C., for appellant.

Ann K.H. Simon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. and Michael J. Farrell and Douglas J. Behr, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROBINSON, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

A three-year investigation ended when appellant, by agreement with the Government, pleaded guilty to unlawful distribution of Dilaudid, the brand name of a drug containing a Schedule II controlled sub-

stance.[1] Pursuant to the plea bargain, appellant surrendered voluntarily, on the day of sentencing, his Drug Enforcement Administration (DEA) registration to dispense Schedule II drugs as a medical practitioner.[2] In exchange therefor was the Government's pledge in the agreement not to "bring additional charges against [appellant] arising out of his relationship with" named individuals.[3] The Government specifically reserved the right to cooperate with the District of Columbia Commission on Licensure to Practice the Healing Arts in any investigation of appellant,[4] but the agreement made no reference to potential DEA action.

Less than a year later, this unmentioned contingency occurred; DEA instituted an administrative proceeding to revoke appellant's registration to dispense substances controlled under Schedules III, IV and V. After unsuccessful negotiations,[5] appellant moved in the District Court for specific enforcement of the plea agreement, alleging its violation by the DEA proceeding.[6] The court denied the motion, stating that

there is simply nothing in the agreeemnt and the preceeding [*sic*] negotiations that encompassed or prohibited the possibility of a subsequent DEA proceeding to revoke [appellant's] registration to distribute Schedule III, IV, or V controlled substances. Indeed, all inferences are to

the contrary. [Appellant] thus had no "expectations reasonably formed in reliance upon" promises made by the government which would entitle him to put a halt to the DEA proceeding.... Because the agreement did not encompass a subsequent DEA registration proceeding, the government did not agree to forego such proceedings.[7]

We perceive no basis for disturbing these conclusions,[8] and accordingly we affirm the District Court's ruling.

Appellant does not contend that the plea agreement expressly precludes DEA revocation action by reason of the promise that the Government would not assert additional charges against appellant stemming from his relationship with the individuals designated.[9] Indeed, during an evidentiary hearing on the motion, both Government and defense counsel indicated that this provision refers to criminal charges,[10] and their only explicit discussion of collateral charges related to criminal investigations possibly under way in Virginia and Maryland.[11] While appellant's legal position is not entirely clear, he claims surprise by DEA's revocation proceeding, and relies, apparently exclusively, on the argument that the limitation of his obligation of voluntary surrender to his Schedule II registration implicitly circumscribed the Govern-

---

1. See 21 U.S.C. §§ 812(b)(2), 842(a)(1) (1982).

2. See *United States v. Fitzhugh*, Crim. No. 83–0226 (D.D.C. Oct. 4, 1983) (plea agreement) at 2, reproduced in Appendix for Appellant (App.) 104 [hereinafter cited as Plea Agreement]. An earlier version of the plea agreement had called for surrender of appellant's registration in toto, but, at his request, this requirement was modified just before entry of the plea. *United States v. Fitzhugh*, Crim. No. 83–0226 (D.D.C. Oct. 4, 1983) (opinion) at 4.

3. Plea Agreement, *supra* note 2, at 2, App. 104.

4. *Id.* at 2–3, App. 104–105.

5. See, e.g., letter from P. David Gavin to Douglas J. Behr (Apr. 12, 1985), App. 141–142.

6. *United States v. Fitzhugh*, Crim. No. 83–0226 (D.D.C.) (motion for enforcement of plea agreement) (filed Apr. 26, 1985).

7. *United States v. Fitzhugh* (opinion), *supra* note 2, at 5–6 (citation omitted).

8. See *United States v. Quigley*, 631 F.2d 415, 416 (5th Cir.1980); *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

9. See note 3 *supra* and accompanying text.

10. See *United States v. Fitzhugh*, Crim. No. 83–0226 (transcript of proceedings) (Tr.) (June 11, 1985) 6 (testimony of R. Kenneth Mundy), 76 (testimony of Douglas J. Behr).

11. See letter from Douglas J. Behr to R. Kenneth Mundy (Sept. 13, 1983) at 2, App. 97; Tr. 74–78.

ment's power to revoke administratively his registration respecting other schedules.

One might be inclined to feel that the conduct of Government counsel was hardly a model of utter frankness. In order to ensure the guilty plea, he acceded to appellant's request to restrict voluntary surrender to Schedule II,[12] fully aware that surrender of more could imperil appellant's medical practice.[13] Counsel also knew that DEA, on the basis of a conviction,[14] could proceed against appellant's registration to dispense under other schedules,[15] and therefore he "didn't feel that [he] was giving up much—giving up anything in reality."[16]

■ On the other hand, counsel's behavior did not rise to a level compromising the integrity of the plea-bargaining process.[17] The Government was under no duty to inform appellant of potential collateral proceedings,[18] nor does Government counsel bear the onus of appellant's alleged misunderstanding. The modification of the surrender requirement from all to only Schedule II registration occurred literally at the eleventh hour; there was little or no opportunity, in the few minutes between the change and tender of the guilty plea to the court, for discussion of its ramifications.[19] Moreover, the District Court found that appellant's counsel was able and experienced, and that appellant himself was fa-

miliar with DEA's independent powers and should have anticipated that an effort to impose administrative sanctions might follow.[20] Appellant complains of a supposed injustice, avowing that he would not have entered into a plea bargain that left open the possibility that he would lose completely his registration to prescribe drugs.[21] But to accept that argument is to pose the prospect of unfairness to the Government, which assertedly would not have accepted a bargain on the terms appellant now advocates.[22]

■ In *Noell v. Bensinger*,[23] the Fifth Circuit addressed a situation quite comparable to the one confronting us. A plea arrangement disposed of a charge of unlawful distribution of controlled substances, and subsequently DEA launched a revocation proceeding. The defendant contended that failure of the prosecutor and the trial judge to warn that he could lose his registration was a violation of the agreement. The court disagreed, first pointing out that "[n]either the prosecutor nor the District Court ... had the authority to speak for the Drug Enforcement Administration."[24] The same result must follow here, for the record is devoid of any DEA commitment to forego its administrative prerogatives, and of any grant of authority to the prosecutor to do so.[25]

---

12. Tr. 80–81.

13. Tr. 80.

14. Tr. 70

15. Tr. 70–71, 79–81.

16. Tr. 81.

17. See *Correale v. United States*, 479 F.2d 944, 947 (1st Cir.1973); *Palmero v. Warden*, 545 F.2d 286, 296 (2d Cir.), *cert. denied*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1976); *Geisser v. United States*, 513 F.2d 862, 869 (5th Cir.1975); *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978).

18. *United States v. Heldt*, 215 U.S.App.D.C. 206, 220, 668 F.2d 1238, 1252 (1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Quigley, supra* note 8, 631 F.2d at 416–417; *Noell v. Bensinger*, 586 F.2d 554, 559 (5th Cir.1978); *United States v. Krasn*, 614 F.2d

1229, 1233–1234 (9th Cir.1980). Compare *Sokoloff v. Saxbe*, 501 F.2d 571, 573 (2d Cir.1974) (judge specifically warned defendant in unlawful-distribution drug case that plea bargain would not insulate him from DEA revocation proceedings).

19. See note 2 *supra; United States v. Fitzhugh* (opinion), *supra* note 2, at 4.

20. *Id.* at 2, 4.

21. Tr. 27.

22. Tr. 87.

23. *Supra* note 18.

24. 586 F.2d at 559.

25. See Tr. 24–26 (testimony of R. Kenneth Mundy) (unnamed DEA field agents involved and

The *Noell* court further held that the defendant there should have known from earlier judicial decisions that his plea would not insulate him from revocation proceedings.[26] Both the statutory law[27] and the case law[28] warn that revocation of registration to distribute controlled substances is a foreseeable consequence of a plea of guilty or nolo contendere to a charge of unlawful distribution. Since, as the District Court noted, both appellant and his counsel were experienced,[29] neither is in position to claim ignorance of that potentiality.

The Fifth Circuit also observed that no basis for an estoppel existed. "The petitioner does not contend," the court said, "that any Government officer induced him to enter a nolo plea by representing that the agency would stay its hand."[30] Here, appellant argues no more than that such a

representation, binding on DEA, was implicit in the modified agreement to limit the voluntary surrender to his registration to dispense Schedule II drugs. We cannot accept that thesis, and appellant's subjective belief to the contrary is not determinative.[31]

The District Court was correct in its ruling that no breach of the plea bargain occurred, and in its denial of appellant's motion for specific performance. The court's judgment is accordingly

*Affirmed.*

informed of circumstances and terms of plea bargain, but no known participation of DEA general counsel's office); Tr. 70–71 (testimony of Douglas J. Behr) (no grant of such authority; DEA chief counsel notified of plea, but only after its entry).

26. 586 F.2d at 559.

27. See 21 U.S.C. § 824 (1982).

28. See, e.g., *id.; Sokoloff v. Saxbe, supra* note 18, 501 F.2d at 573.

29. *United States v. Fitzhugh* (opinion), *supra* note 2, at 2, 4.

30. 586 F.2d at 559.

31. *United States v. Heldt, supra* note 18, 215 U.S.App.D.C. at 220, 668 F.2d at 1252.