[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14216
Non-Argument Calendar

_____

D. C. Docket No. 96-00164-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 3, 2008)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

In this out-of-time direct appeal, defendant-appellant David Johnson challenges his convictions for six armed bank robberies and six counts of using and carrying a firearm during commission of a felony, in violation of 18 U.S.C. §§ 2113 and 924. Johnson argues that the district court plainly erred in determining that he was competent to stand trial and in failing to hold, sua sponte, a competency hearing. He also contends that the court plainly erred in admitting as evidence at trial: (1) a satchel and firearm seized during his attempted arrest, and (2) his post-arrest, inculpatory statement. Johnson further challenges the sufficiency of the evidence to support each of his convictions. Finally, Johnson challenges his sentence of 100 months of imprisonment for the six counts of armed robbery as being procedurally and substantively unreasonable. We reject all of these arguments for the following reasons and AFFIRM.

## I. BACKGROUND

The issue of Johnson's competency to stand trial was evaluated at a pre-trial hearing. R6 at 4-8. Johnson's attorney reported that Dr. Scott Duncan, a Bureau of Prisons' psychologist, had examined Johnson and found that he had no mental disease or defect, that he appreciated the wrongfulness of his actions, and that he was capable of assisting in his defense. A second evaluation by a private psychiatrist, Dr. Dave Davis, confirmed these findings. Out of an abundance of

2

caution, Johnson underwent a MRI and EEG at Grady Hospital. A radiologist, Dr. Pat Hudgins, concluded the test results were normal and ruled out organic brain disease. Johnson's attorney acknowledged that there was no medical evidence to show a mental disease or defect that would hinder Johnson's ability to assist in his defense or render a defense in the case. Based on this evidence, the magistrate judge found the defendant was competent to stand trial. Id. at 8; R1-56.

The magistrate judge also heard evidence at this same hearing regarding Johnson's motion to suppress a satchel and gun seized by law enforcement officers during an attempted arrest of Johnson. R6 at 11-80; R1-43. Law enforcement officers testified that, armed with an arrest warrant for Johnson, they entered the apartment of Joel Moss pursuant to his consent and information that Johnson was inside. R6 at 25-26, 41-42. Agents heard a loud crash within minutes of entering. Id. at 28, 31, 65. Inside a bedroom, a woman said Johnson had just escaped through a broken window. Id. at 32, 66. The woman also identified an unlatched satchel lying underneath that window as Johnson's bag. Id. at 29, 66-67. The satchel felt heavy and looked like the one in the bank surveillance photos. Id. at 29, 67-68. Agent Green saw other agents chasing Johnson outside, and believed the apartment had not been secured as there were several unidentified people inside who may have been friendly to Johnson. Id. at 28, 68-69, 76-77. Agent Green

opened the satchel, found a 9 mm pistol, and had the agents on foot pursuing

Johnson notified about the gun. Id. at 68-70. The agents did not have a search

warrant or consent to search the bag or seize its contents. The magistrate judge

concluded the seizure of the bag was justified based on its findings that the bag

was in plain view of the officers and linked to the bank robberies. R1-59 at 5. In

addition, the magistrate judge concluded that the search of the bag and seizure of

the gun inside were justified by the exigent circumstance of the need to protect the

FBI agents' safety. Id. No objections were filed to the magistrate's report and

recommendation, and the district court adopted it and denied Johnson's motion to

suppress. R1-65.

After Johnson's arrest, he made incriminating statements to police officers

concerning his involvement in the bank robberies. R6 at 102; R10 at 626-47.

Johnson filed a pre-trial motion to suppress these statements, but then withdrew the

motion before the court ruled on the merits. R1-16; R1-57 at 4-5. In the motion to

withdraw, trial counsel acknowledged, "After a consideration of the totality of the

circumstances, including the defendant's past history, education, physical

condition and the pertinent circumstances surrounding his statement, the

statements in question appear to be the product of a rational intellect and a free

will." R1-57 at 5. Accordingly, the magistrate judge issued a report and

recommendation denying as moot Johnson's motion to suppress his statements. R1-59 at 6. No objections were filed, nor did Johnson object at trial to the admission of his post-arrest statements. R10 at 626-47.

Following a jury trial, Johnson was found guilty of committing the crimes as charged and sentenced in 1998 to the low-end Guidelines range of 100 months of imprisonment on the bank robbery charges, followed by 105 years of imprisonment on the firearms charges. R2-90; R12 at 23-24. After various filings, Johnson submitted in August of 2006 a 28 U.S.C. § 2255 motion, which was granted only to allow him to file this out-of-time, direct appeal. R3-128 at 11.

## II. DISCUSSION

A. The District Court Did Not Plainly Err in Finding Johnson Competent to Stand Trial and in Not Conducting a Second Competency Hearing

Johnson contends that he was not competent to stand trial because he had a history of mental problems, he had previously been prescribed medication for schizophrenia, he did not understand certain proposed stipulations, he had referred to the jury as devils, and the district court had noted that Johnson may have secured a shorter sentence if he had been able to work out a plea agreement. Additionally, Johnson argues his procedural due process rights were violated

5

because the district court failed to conduct on its own initiative a second competency hearing.

Because Johnson did not object on these bases in district court, we review only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). The plain error rule requires the appellant to show "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. (quotation and citations omitted). Only if all three prongs are met may the appellate court determine whether "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Due process prohibits the criminal prosecution of a defendant who is not competent to stand trial. United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005) (per curiam). The test of a defendant's competency is whether he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995) (quotation and citation omitted). Relevant information includes the defendant's behavior, his demeanor at trial, and medical opinions on his competence to stand trial. Id. "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence

6

to stand trial." Id. at 1107. A trial court must conduct on its own initiative a competency hearing if it has information raising a "bona fide doubt" as to the defendant's competency. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 842 (1966); Watts v. Singletary, 87 F.3d 1282, 1287 (11th Cir. 1996).

In this case, Johnson has failed to establish that there was a bona fide doubt as to his competency at trial which would require a second competency hearing. Two different doctors examined Johnson and concluded that he was competent to stand trial. Although Johnson states that he was prescribed a drug for schizophrenia seven years before trial, he does not suggest that he was taking any drugs at the time of trial. Regardless, the mere fact that a defendant is taking drugs during trial does not necessitate a competency hearing. Watts, 87 F.3d at 1287-88. Johnson also points out that sometime after the trial and sentencing, he was involuntarily committed for mental health treatment and diagnosed with paranoid schizophrenia. This information has no bearing on Johnson's procedural due process claim, however, since we "'may consider only the information before the trial court before and during trial.'" Medina, 59 F.3d at 1106 (quotation omitted). While Johnson's mother expressed concerns about his mental health and history, her lay opinion is insufficient to raise a bona fide doubt given the other medical opinions and facts indicating Johnson's competence. Based on the information

available at the time of trial, we conclude the district court did not plainly err in not conducting on its own initiative a second competency hearing.

The record also establishes that Johnson was competent to stand trial. In addition to the medical evidence, Johnson's behavior and demeanor at trial was not unduly circumspect. Although Johnson told the district court right before trial began that he did not want to be "condemned by these devils", R8 at 38, his anxiety about the proceedings does not mean he did not understand them or that he could not assist his attorney. See Watts, 87 F.3d at 1288 (defendant's repeated concerns about being on trial for murder showed he understood the proceedings against him). During the rest of trial, Johnson did not disrupt or act inappropriately. When questioned by the district court concerning his decision not to testify, Johnson verified that he understood his decision. R10 at 688.

Johnson asserts that he was incompetent because he would not stipulate that the banks in question were FDIC insured or to the loss amount from each bank. Even if Johnson did not understand these stipulations, this does not mean he was unable to assist his counsel in his defense. "Because legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect." Watts, 87 F. 3d at 1288. At the pre-trial hearing,

8

Johnson's attorney told the magistrate judge that there was no medical evidence to show Johnson could not assist in his defense. R6 at 7. The bulk of trial decisions rest on defense counsel, not the criminal defendant, and the failure of Johnson's counsel to raise the competency issue during trial "is evidence that the defendant's competency was not really in doubt." Watts, 87 F.3d at 1288.

Based on the record, we conclude the district court did not plainly err in not conducting on its own initiative a second competency hearing, nor did it plainly err in determining that Johnson was competent to stand trial.

B. The District Court Did Not Plainly Err In Admitting As Evidence Johnson's Satchel And Gun

Johnson argues that the district court erred in admitting his satchel and gun found inside it, which were seized during his attempted arrest. He contends that there was no probable cause to search the satchel because the gun was not in plain view, and the agent did not believe or suspect the satchel had a gun until after he searched it. Johnson further argues there were no exigent circumstances to justify the search because the officers' safety was not threatened.

Johnson did not object to the district court's denial of his motion to suppress the satchel and gun. We therefore review the district court's factual findings for plain error only. United States v. Hall, 716 F.2d 826, 828-29 (11th Cir. 1983).

9

"The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located." United States v. Rodgers, 924 F.2d 219, 221 (11th Cir. 1991). Johnson does not contest the right of the agents to be in the bedroom where the satchel was found. Agent Green immediately noticed the bag lying under the broken window through which Johnson had just escaped and was told by a female in the bedroom that it belonged to Johnson. The bag looked identical to the one in the photos of the robbed banks. In light of these facts, the officers were justified in seizing the bag under the plain view doctrine.

The officers' search of the bag was also justified by the exigent circumstances exception to the warrant requirement. A common situation in which this exception applies is a "danger to arresting officers or the public." United States v. Satterfield, 743 F.2d 827, 843-44 (11th Cir. 1984). When the police have reason to believe that dangerous weapons are accessible to a suspect or an accomplice who is present in the building, officers may conduct a "cursory safety check" to protect themselves or the public. Id. at 844. Whether exigent circumstances exist must take into account the particular facts of the situation to assess whether the officer's actions were objectively reasonable. Rodgers, 924 F.2d at 223.

Here, the arresting officers knew that Johnson had fired a gun during several of the bank robberies and considered him to be armed and dangerous. When the agents entered the apartment, there were five people inside, not including Johnson. The officers did not know whether these people were friendly or not to Johnson, although they did know that Johnson's girlfriend lived there. Within a minute or so of entering the apartment, Johnson broke through a bedroom window and escaped. An unidentified female in the room who was not handcuffed at the time and another male were inside that same bedroom. That female identified the bag in the bedroom as belonging to Johnson. Agent Green testified that the bag felt heavy and that if there was a gun in the bag, he needed to ensure the gun was not cocked so that it would not accidentally kill someone. R6 at 78. He also wanted to alert the pursuing officers that he had found a gun. Id. at 68-69. Agent Green stated he searched the bag because he was concerned about the safety of his fellow agents both inside the apartment and those who were pursuing Johnson on foot.

Contrary to Johnson's assertion, Agent Green's testimony reflects that he did suspect there was a gun in the bag and acted to protect the safety of the law enforcement officers. The agent's actions were objectively reasonable under the circumstances and the district court's finding that the agents acted out of self-

11

protection when they searched the bag is not plain error. These facts justify a finding of exigent circumstances. See United States v. Quigley, 631 F.2d 415, 418-19 (5th Circuit 1980) (warrantless search and seizure of a gun under a mattress within seconds of arresting defendant suspected to be armed was a reasonable safety check). Accordingly, we conclude the district court did not plainly err in admitting the satchel and gun as evidence at trial.

C. Johnson Has Waived His Right to Challenge His Post-Arrest Statements

Johnson next challenges the admission of his post-arrest statements on grounds that he did not freely and voluntarily waive his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). Johnson concedes that he withdrew his motion to suppress his statements before the magistrate judge ruled on it, but suggests that we may review the merits of his argument for plain error. We conclude that Johnson has waived the right to raise this issue on appeal and therefore do not reach the merits of his claim.

A motion to suppress evidence must be made before trial. Federal Rule of Criminal Procedure 12(b)(3)(c). Failure to do so constitutes waiver unless the district court grants relief for good cause shown. Federal Rule of Criminal Procedure 12(e); see United States v. Nix, 438 F.3d 1284, 1288 (11th Cir. 2006); United States v. Ford, 34 F.3d 992, 994 n.2 (11th Cir. 1994). If a defendant does

12

not request relief from the waiver, we have not addressed the element of "good cause." See United States v. Suescun, 237 F.3d 1284, 1287 n.7 (11th Cir. 2001). The Supreme Court has explained that "[w]aiver is different from forfeiture." United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993). Forfeiture is the failure to make a timely assertion of a right and is subject to plain error review under Federal Rule of Criminal Procedure 52(b). Id. at 732-33, 113 S. Ct. at 1777. Waiver, in contrast, is the "intentional relinquishment or abandonment of a known right" which extinguishes appellate review because there is technically no "error" to correct. Id. at 732-33, 113 S. Ct. at 1777.

The record establishes that Johnson expressly waived his right to challenge on appeal his post-arrest statements. See Federal Rule of Criminal Procedure 12(b)(3)(c); Nix, 438 F.3d at 1288. In a written motion, Johnson voluntarily withdrew his earlier motion to suppress his post-arrest statements, which prompted the magistrate judge to find the motion to suppress to be moot. The district court consequently never denied Johnson's motion to suppress because there was no longer a motion to rule on. Because the district court did not rule on Johnson's motion to suppress, there is no ruling for us to review or "error" to correct. See Olano, 507 U.S. at 732, 117 S. Ct .at 1777; United States v. Montoya, 782 F.2d 1554, 1556 (11th Cir. 1986) (per curiam) (defendant's withdrawal of motion for

13

mistrial precluded appellate review, absent exceptional circumstances, thereby preventing defendant's "sandbagging" of the district court by withdrawing a motion and then arguing on appeal reversible error for failing to grant the motion). Furthermore, Johnson's failure to object to the admission of his post-arrest statements at trial also constitutes waiver. See United States v. Masters, 118 F.3d 1524, 1526 (11th Cir. 1997) (per curiam) (refusing to conduct plain error review where defendant withdrew his objection at sentencing to upward departure).

In sum, Johnson's withdrawal of his motion to suppress and failure to object at trial renders plain error review of this issue on appeal inapplicable. See Olano, 507 U.S. at 732, 117 S. Ct. at 1777, Masters, 118 F.3d at 1526. Johnson did not seek relief from the waiver, and we therefore do not address the merits of his arguments on appeal. Federal Rule of Criminal Procedure 12(e); Suescun, 237 F.3d at 1287 n.7.

D. There Was Sufficient Evidence to Support Johnson's Convictions

Johnson argues there was insufficient evidence to support his convictions for six counts of armed bank robbery and six counts of using and carrying a firearm during a crime of violence. He discounts the testimony of his accomplice, Kevin Walters, and that of certain witnesses who identified him at trial but not in a photo line-up. Johnson also notes that his fingerprints were not found in the robbed

14

banks and that eyewitnesses said Johnson was a few inches taller than he actually is.

We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict. United States v. Hernandez, 433 F.3d 1328, 1332-33 (11th Cir. 2005).

To support a conviction for armed bank robbery, the government had to prove that: (1) the defendant took from a person money or property possessed by a federally insured bank; (2) the defendant did so by means of force, violence, or intimidation; and (3) the defendant assaulted or put in jeopardy the life of a person by the use of a dangerous weapon or device while engaged in the taking of property or money. 18 U.S.C. § 2113. To support a conviction for the firearm charges, the government had to prove that: (1) the defendant committed the felony offense charged in the corresponding bank robbery charge; (2) the felony offense was a crime of violence; and (3) the defendant knowingly used or carried a firearm while committing the crime of violence. 18 U.S.C. § 924(c)(1).

Here, the government produced ample evidence that Johnson robbed at gunpoint six federally insured banks in the Atlanta area during January of 1996. Johnson admitted to police officers that he committed five of the six robberies, and

15

identified himself in surveillance photos of the sixth robbery that he could not recall. R10 at 632. He admitted that the trunk of his car was burned by exploding dyepacks taken with the stolen money from various robberies. Id. at 635. He further admitted owning the shoulder bag and gun identified at trial by various witnesses as those used in the robberies. Id. at 631-41.

In addition to Johnson's confession, numerous eyewitnesses from each of the robberies testified about the events, R9 at 248-51, 290-96, 353-61, 403-10 and R10 at 617-21; Johnson's accomplice in two of the robberies incriminated Johnson, id. at 550-67; bullet casings found at the scene of three of the robberies matched Johnson's gun, id. at 670; Johnson's girlfriend testified that Johnson gave her expensive gifts and cash around the time of the robberies and told her he had robbed a bank, id. at 504-07; and a red stain on the floorboard from Johnson's car matched the bank dyepack. Id. at 609-12. It was up to the jury to resolve any inconsistencies in the witnesses' physical descriptions of the robber and determine the credibility of the various witnesses, including Johnson's accomplice. See Hernandez, 433 F.3d at 1334. The evidence presented at trial was more than sufficient to sustain Johnson's convictions on each count.

E. Johnson's Sentence was Procedurally and Substantively Reasonable

16

Johnson challenges his sentence of 100 months of imprisonment for the six armed robbery counts violating 18 U.S.C. § 2113. First, he argues it is procedurally unreasonable because the district court applied the Sentencing Guidelines in a mandatory, versus advisory, fashion in violation of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). Second, Johnson asserts that his sentence is substantively unreasonable under 18 U.S.C. § 3353(a) because it is too severe given Johnson's mental health, his natural life expectancy, and the total sentence imposed for his unlawful conduct.

Johnson did not object on these bases in the district court so we review only for plain error. United States v. Underwood, 446 F.3d 1340, 1343 (11th Cir. 2006), cert. denied, ___ U.S. ___ , 127 S. Ct. 225 (2006) . As previously discussed, plain error requires there to be an error, that is plain, and that affects the defendant's substantial rights. Id. at 1343. If all three factors are met, then we may correct the error if "it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id.

Both Johnson and the government agree that the first and second prongs have been met. The district court erred when it sentenced Johnson in 1998 because it considered the Guidelines to be mandatory. R12 at 23. The error is "plain"

17

because Booker is now the law at the time of appellate consideration. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

Where the parties disagree is with respect to the third prong. The "burden of showing prejudice to meet the third-prong requirement is anything but easy." Id. Specifically, Johnson must prove that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of a binding fashion by the sentencing judge in this case." Id. at 1301. "[W]here the effect of an error on the result in the district court is uncertain or indeterminate - where we would have to speculate - the appellant has not met his burden . . . of showing that his substantial rights have been affected." Id.

Johnson has not met his burden of showing prejudice in this case because the district court gave no indication that it might have imposed a different sentence if the Guidelines were advisory. At Johnson's sentencing, the district court stated, "I think the court's discretion in this case is confined to the area of the guideline consideration, and as I indicated earlier, I will sentence Mr. Johnson to the low end of the guidelines, which is a hundred months." R12 at 23. The fact that the sentence was at the low-end of the applicable guideline range does not, by itself, demonstrate "a reasonable probability [of] a lesser sentence" because it is "too

18

speculative, and more than speculation is required." <u>United States v. Fields</u>, 408 F.3d 1356, 1361 (11th Cir. 2005).

While the district court expressed concern about the length of the statutory, mandatory sentences for Johnson's firearm offenses, the court indicated no frustration with the severity of the Guidelines sentence for the armed robbery charges. <u>Compare</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1332-33 (11th Cir. 2005) (third prong met where sentencing judge made several comments that mandatory Guidelines sentence was too severe). To the contrary, the court stated that the "evidence was pretty clear" that Johnson was involved in the robberies and that "a hundred months is sufficient under the guidelines" for the six armed robbery charges. R12 at 11-17. The district court also noted that the Guidelines sentence "has a minor impact on the overall sentence" given the statutory minimum of 105 years for the firearm offenses. <u>Id.</u> at 11. Overall, the court found that "the sentence imposed under the guidelines is, in the court's view, adequate to meet the sentencing goals of punishment and general deterrence and protection of the community." <u>Id.</u> at 26.

Based on the record, Johnson fails to satisfy the third prong of the plain error test because he has not shown a reasonable probability that the district court would have imposed a different sentence had the Guidelines been merely advisory. <u>See</u>

19

Underwood, 446 F.3d at 1343-44. We therefore conclude his sentence was procedurally reasonable.

We also conclude that Johnson's sentence for the robbery offenses was substantively reasonable. Pursuant to 18 U.S.C. § 3553(a)(2), the sentencing court shall impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing: reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, deterring criminal conduct, protecting the public from future criminal conduct by the defendant, and providing the defendant with needed educational or vocational training or medical care. The statute also instructs the sentencing court to consider certain factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). "Review for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). Although a sentence within the Guidelines range is not per se reasonable, "we ordinarily will expect that choice to be a reasonable one." Id.

Johnson's argument that his sentence is unreasonable is meritless. The district court carefully considered Johnson's mental health history, as evidenced by the court's decision to honor Johnson's request to be sent to a facility where his

condition could be further evaluated and monitored. R12 at 26. Although Johnson's total sentence exceeds his natural life span, this fact is attributable to the mandatory consecutive sentences for the firearms offenses which Johnson does not contest. As the district court noted, the low end sentence of 100 months for six bank robberies was a minor addition to the sentence of 105 years for the firearms sentence. R12 at 11. Nothing in the record suggest that the robbery sentence was unreasonable, and the district court therefore did not err in sentencing Johnson. See Talley, 431 F.3d at 788 (sentence at the low end of the Guidelines range was reasonable where district court considered defendant's need for medical treatment and other appropriate sentencing factors).

## III. CONCLUSION

Johnson challenges his convictions related to six armed bank robberies and his sentence for the violations of 18 U.S.C. § 2113. Based on a careful review of the record, we conclude that Johnson was competent to stand trial and that the district court did not plainly err in not holding a second competency hearing on its own initiative. Nor did the district court plainly err in admitting at trial Johnson's satchel and gun based on the plain view doctrine and the exigency exception to the warrant requirement. Because Johnson withdrew his motion to suppress his post-arrest statements prior to a court ruling, and did not object to these statements at

trial, he has waived his challenge to the voluntariness of his statements. The government also presented more than sufficient evidence to support the jury's guilty verdict on all counts. Finally, we conclude that Johnson's sentence of 105 months of imprisonment for the six armed bank robbery counts was both procedurally and substantively reasonable. Johnson's convictions and sentences are accordingly **AFFIRMED.**