[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15553
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20089-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRED QUINTON COLLINS,
a.k.a. Reggie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 16, 2011)

Before PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Fred Collins appeals his convictions for conspiring to traffic children for sex, 18 U.S.C. § 1594(c), transporting a minor for commercial sex, id. §§ 2, 1591(a)(1), (b)(2), transporting an individual to engage in prostitution, id. §§ 2, 2421, coercing and enticing individuals to engage in commercial sex, id. §§ 2, 2422(a), inducing a minor to engage in prostitution, id. §§ 2, 2422(b), and transporting a minor for the purpose of prostitution, id. §§ 2, 2423(a). Collins challenges the denial of his motion to suppress his cellular telephone, cash, evidence gathered from his hotel room and the denial of his motions to remove a prospective juror and obtain an additional peremptory strike. We affirm.

The district court did not err by denying Collins's motion to suppress his cellular telephone. While Collins was a guest at the Clevelander Hotel, its staff received several complaints that Collins was monitoring three females who were soliciting guests for sex. Abdiel Arosemena, the director of security at the Clevelander, reported Collins to the Miami Beach Police Department and officers surveilled the hotel. The next day, Arosemena asked Captain Larry Bornstein, who was standing across the street from the hotel, to help evict Collins and other occupants from his hotel room. See Fla. Stat. § 509.141(1); Zivojinovich v. Barner, 525 F.3d 1059, 1067 (11th Cir. 2008). When Arosemena, accompanied by Bornstein and other officers, told Collins in the lobby of the hotel that he was

2

being evicted, Collins withdrew from his pocket a cellular telephone. Based on the possibility that a telephone call to Collins's room could place officers or guests of the hotel in danger or prompt accomplices to destroy evidence, exigent circumstances permitted Bornstein to seize the telephone. See United States v. Place, 462 U.S. 696, 701, 103 S. Ct. 2627, 2641 (1983); United States v. Quigley, 631 F.2d 415, 419 (5th Cir. 1980).

The district court did not err by admitting the cash that Bornstein extracted from Collins's pocket. Based on Collins's response to the notice of eviction and the possibility that Collins was armed, see United States v. Cruz, 805 F.2d 1464, 1470 n.6 (11th Cir. 1986) (noting a connection between violence, cash, and prostitution), Bornstein had reasonable suspicion to pat Collins down for weapons, see Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968); United States v. Acosta, 363 F.3d 1141, 1147 (11th Cir. 2004). Bornstein felt an "unidentifiable thick wad" in Collins's pocket, but its "contour or mass [did not] make[] its identity immediately apparent," Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137 (1993), so its removal from Collins's pocket is problematic. Nevertheless, the cash was admissible under the inevitable discovery doctrine because of the reasonable probability that the officers "would have obtained the evidence 'by virtue of ordinary investigations of evidence or leads already in their

possession,'" United States v. Virden, 488 F.3d 1317, 1323 (11th Cir. 2007) (quoting United States v. Brookins, 614 F.2d 1037, 1048 (5th Cir. 1980)), involving prostitution and Collins's pimping of a minor, see United States v. Delancy, 502 F.3d 1297, 1315 (11th Cir. 2007). Moreover, the failure to exclude the cash was harmless in the light of other evidence connecting Collins to prostitution. See id. at 1315 n.12.

The district court did not err by denying Collins's motion to suppress evidence gathered at his hotel room. When Arosemena told Collins that he was being evicted, Collins replied, "Okay." At that point, Bornstein and other officers could reasonably have believed that hotel management had control of and could admit law enforcement to Collins's room. See United States v. Mercer, 541 F.3d 1070, 1074–75 (11th Cir. 2008). In any event, Collins did not suffer any invasion of his right to privacy under the Fourth Amendment when Arosemena knocked on the door of Collins's room to evict its occupants and the women who were inside opened the door. See United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003). Bornstein and the other officers were permitted to question the women they observed through the open door, see United States v. Tobin, 923 F.2d 1506, 1511–12 (11th Cir. 1991), and to follow Arosemena into the hotel room, see United States v. Simpson, 904 F.2d 607, 609–10 (11th Cir. 1990). Evidence

4

observed in the room, in addition to information obtained from the women, gave the officers probable cause to search for and seize from the hotel room evidence related to prostitution activities. See Tobin, 923 F.2d at 1511–12. Collins complains about the admission of evidence acquired from the womens' cellular telephones and of their statements to the officers, but "[a]n individual can urge suppression of evidence only if his Fourth Amendment rights were violated by the challenged search or seizure," United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994). Collins also complains about the admission of evidence about his flight from police and testimony from his mother, but he waived his objection by failing to present his arguments to the district court, Fed. R. Crim. P. 12(b)(3)(C), (e); see United States v. Lall, 607 F.3d 1277, 1288 (11th Cir. 2010).

The district court also did not abuse its discretion by denying Collins's request to remove from the venire a prospective juror for cause and then refusing to give him an additional peremptory challenge. Collins admits that his argument about "constitutional error" is foreclosed by United States v. Martinez-Salazar, 528 U.S. 304, 307, 120 S. Ct. 774, 777 (2000), but he argues that the district court should have exercised its "supervisory powers" to make him "whole by granting . . . his request for an additional peremptory challenge," as provided for under Florida law, see Busby v. State, 894 So. 2d 88, 103 (Fla. 2004). Although Collins

is correct that "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights," <u>United States v. DiBernardo</u>, 775 F.2d 1470, 1475 (11th Cir. 1985), Collins did not suffer a violation of his right to an impartial trial, <u>see</u> <u>Martinez-Salazar</u>, 528 U.S. at 315–17, 120 S. Ct. at 781–82; <u>Spivey v. Head</u>, 207 F.3d 1263, 1273–74 (11th Cir. 2000).

We **AFFIRM** Collins's convictions.